OPINION BY PLATT, J.:
*956 Appellant, Communications Network International, Ltd. (CNI), appeals from the trial court's order granting summary judgment in favor of all defendants/Appellees, William Mark Mullineaux, Esquire; Astor Weiss Kaplan & Mandel, LLP; and Flamm Walton P.C.; in this legal malpractice case.[1] The trial court concluded that the suit was barred by the statute of limitations. Appellant claims that the trial court should have found the limitations period tolled under the doctrine of equitable estoppel. We affirm.
This seventeen-year-old case is lengthy, complicated and convoluted.[2] We derive the facts from the opinion of the trial court, the bankruptcy court opinion together with the subsequent federal appeals decisions, and our independent review of the record. To the extent possible, we summarize only the facts most relevant to the claims at issue in this appeal.
In the late 1990's, CNI, now defunct, operated as a reseller of long distance telephone services, which it bought "in bulk" at a volume discount from licensed common carriers, most notably for this case, WorldCom. Lawrence Willis was the chief executive officer of CNI. Curtis Cooke was the chief financial officer. CNI resold the long distance services to end-users, seeking to profit as the "middleman" or wholesaler.
Around 1999, CNI switched common carriers, to WorldCom. CNI identified three agreements with WorldCom: an alleged oral agreement, a standard services contract (the "Rebiller Agreement"), and a second written agreement, the Intelenet Agreement (also apparently referred to as the "Donohue Agreement"), with additional rebates and other price concessions and service enhancements. WorldCom eventually disavowed the Intelenet Agreement as inappropriate for the business relationship with CNI.
It bears noting that special concessions to a favored customer on their face violate the anti-discrimination requirements of the Filed Rate, or Filed Tariff Doctrine as provided in the Federal Communications Act. The Filed Rate Doctrine is an anti-discrimination statute which makes it unlawful for a carrier to "extend to any person any privileges or facilities in such communication, or employ or enforce any classifications, regulations, or practices affecting such charges, except as specified in such schedule." 47 U.S.C.A. § 203(c).[3]
Here, CNI appears to assert, inter alia , that its business model assumed a cost structure which depended on the rate concessions contained in the additional agreement. When these discounts were not forthcoming, and WorldCom raised its rates, CNI suffered a cash flow crisis. It lacked income to pay its bills, and its checks to WorldCom were dishonored for insufficient funds. CNI disputes that its *957 checks were dishonored, and claims they were cashed in the ordinary course of business.
In any event, in 2001, WorldCom, claiming non-payment, sued CNI for breach of contract. WorldCom also stopped supplying carrier services to CNI and began providing long distance telephone services directly to the end-user customers, bypassing CNI, (as provided under the pertinent tariff in the event of a breach of contract).
CNI retained Attorney Mullineaux, then with the firm of Ratner & Prestia, to represent it to defend against the WorldCom complaint.[4] Mullineaux filed an answer to WorldCom's complaint and counterclaimed for breach of contract, notably "slamming" and defamation. Slamming is the illegal practice of switching telephone service subscribers to a new communications carrier without proper authorization.[5]
In July of 2002, WorldCom filed for bankruptcy in the Bankruptcy Court of the Southern District of New York.[6] CNI filed a proof of claim in the bankruptcy case, which tracked its counter-claims in the previous suit. In 2006, the bankruptcy court filed an opinion, which concluded that CNI had breached its agreement with WorldCom. The court rejected most, but not all, of CNI's counterclaims on the ground that the rate concessions and rebates CNI claimed by special contract were prohibited by the Filed Rate Doctrine.
The bankruptcy court noted that there was debate about the continued relevance of the Filed Rate Doctrine after the Federal Communications Commission (FCC) issued "detariffing" orders. These orders required carriers to withdraw their tariffs by July 31, 2001, in an apparent effort to make the telecommunications market more competitive. Nevertheless, the court concluded:
The view prevails, however, that the filed-rate doctrine still applies until the United States Supreme Court or Congress expressly reject it. Moreover, this [c]ourt is bound by Second Circuit precedent, which held that the FCC unsuccessfully tried to regulate the doctrine out of existence and that therefore the doctrine still applies. The [c]ourt also notes that the events giving rise to the present controversy occurred before the detariffing orders took effect. Thus, the filed-rate doctrine applies to the instant proceeding.
In re WorldCom, Inc. , No. 02-13533AJG, 2006 WL 693370, at *5 (Bankr. S.D.N.Y. Mar. 13, 2006), amended sub nom. In re Worldcom, Inc. , No. 02-13533AJG, 2008 WL 2079943 (Bankr. S.D.N.Y. May 14, 2008).
Notably for this appeal, the bankruptcy court rejected CNI's slamming counterclaim, *958 but not on the basis of the Filed Rate Doctrine. The court rejected the slamming claims for pleading defects. It decided that the slamming counterclaims asserted only "[m]ere conclusory allegations" and dismissed them for failure to allege supporting facts. Id. at *10 ("CNI, however, has merely stated that WorldCom engaged in slamming practices without alleging supporting facts. WorldCom's settlement with the FCC [involving an unrelated reseller] does not prove WorldCom's actual practices toward CNI. Mere conclusory allegations fail to state a claim and must therefore be dismissed.").[7]
CNI asserts that Mullineaux, rather than admit that the bankruptcy court dismissed the slamming allegations for lack of supportive facts (which it blames solely on Mullineaux), falsely advised Willis and Cooke that the bankruptcy court had rejected all claims based on the Filed Rate Doctrine.[8]
CNI appealed to the federal district court. The district court affirmed. See Commc'ns Network Int'l, Ltd. v. MCI WorldCom Commc'ns, Inc. , No. 08-CV-7254 GBD, 2010 WL 3959601, at *10 (S.D.N.Y. Sept. 14, 2010). Notably, it is undisputed that Mullineaux sent CNI (both Willis and Cooke) copies of both adverse decisions (the bankruptcy court and district court opinions), rejecting the slamming claim for lack of factual support.
Nevertheless, CNI argues that Willis and Cooke relied solely on Mullineaux's oral explanations, and did not read the opinions themselves, even though they concede that the decisions were discussed at meetings of CNI's board of directors. Willis and Cooke maintain, through CNI, that they were unsophisticated laypersons who would not have understood the "legalese" anyway.
CNI asserts that Mullineaux concealed the bankruptcy court's "failure to support" conclusion to avoid responsibility for not properly pleading the counterclaim. It maintains that Mullineaux falsely claimed to Willis and Cooke that the bankruptcy court rejected all claims based on the Filed Rate Doctrine, and incorrectly advised CNI that the court's interpretation of the Filed Rate Doctrine was wrong and would be overturned on appeal.
On receipt of the district court opinion, (which affirmed the bankruptcy court decision), Mullineaux sent an email to Curtis Cooke, (again, with a copy of the decision). In pertinent part, he wrote:
This firm would not be interested in taking an appeal on a contingency agreement. I still think the decision by the court is incorrect but two judges now disagree and I have invested a large amount of lawyers (sic) time with no return. I cannot make further investments with this case.
(E-mail from Mark Mullineaux to Curtis Cooke, 10/28/10, Exhibit R to Motion for Summary Judgment of Astor Weiss and Mullineaux, 12/19/16, [RR 1246a] ). For reasons not readily apparent from the record before us, the appeal proceeded anyway.
Pertinent to the issues in this appeal, Mullineaux had neglected to update his email address with the district court. As a result, the district court sent its decision to *959 Mullineaux's prior firm. By the time Mullineaux found the decision on the court's website, and filed an appeal, the time to file had expired. He was allowed to file an appeal nunc pro tunc .
On January 24, 2013, in a two-to-one decision, a panel of the Second Circuit reversed the district court's order (which had reopened the time for appeal), and dismissed all of CNI's claims as untimely filed. See In re WorldCom, Inc. , 708 F.3d 327, 342 (2d Cir. 2013).
The Second Circuit opinion does not address the merits of the underlying case. Instead, it dismissed all claims solely on its determination that counsel (Attorney Mullineaux) was negligent in not updating his email address. The Majority conceded that its own decision was the only one it could find which denied nunc pro tunc relief even when the petitioner had satisfied every requirement of the applicable rule, as Mullineaux did here. See id. at 340. It is difficult to dispute that the author of the Court of Appeals decision was highly critical of Mullineaux's failure to maintain a current email address to receive notice, characterizing it as "egregious," ( id. at n.67 ), and "entirely and indefensibly a problem of [ ] counsel's making[.]"[9] ( Id. ). The court added, "Rule 4(a)(6) was not designed to reward such negligence." ( Id. ) (footnote omitted).
CNI maintains that "[i]t was at this moment ... that CNI was put on notice that it needed an independent review of the litigation." (Appellant's Brief, at 32) (emphasis added). CNI filed the instant malpractice lawsuit on December 9, 2014 , almost twenty-three months later.[10]
Appellees moved for summary judgment, based on the statute of limitations, which the trial court granted. The trial court summarized its reasoning as follows: "In this legal malpractice action, it appears plaintiff's former attorney may have violated the standard of care on multiple occasions. However, plaintiff did not file this action until after the applicable statutes of limitations had run upon its malpractice claims." (Trial Court Opinion, 7/13/17, at 1).
The court decided that under controlling caselaw, CNI, through Willis and Cooke, had a duty to exercise reasonable diligence to protect its legal rights before the statute of limitations expired. The court concluded that CNI's principals should have known at least by October 28, 2010 (the date of the district court opinion) that CNI had been "injured" as that term applies to legal malpractice. This appeal followed.
Appellant presents four "questions" on appeal (incorrectly formatted as declaratory statements) which we reproduce verbatim to avoid further confusion:[11]
*960 1. Failure of the Lower Court to Apply-or Even Address-Equitable Estoppel When There Was Overwhelming Factual Evidence to Support its Application to Bar Defendant Attorneys' Statute of Limitations Defenses.
2. Failure of the Lower Court to Construe Facts in Plaintiff's Favor and Toll the Running of the Statute of Limitations.
3. The Court Improperly Dismissed Claims Against Defendant Attorneys for Breaches of the Standard of Care Which Occurred in 2013.
4. The Lower Court Erroneously Dismissed Plaintiff's Claims for the Money Spent on the Failed Lawsuit.
(Appellant's Brief, at 8-10).
We review Appellant's claims in light of the following principles:
Our review on an appeal from the grant of a motion for summary judgment is well-settled. A reviewing court may disturb the order of the trial court only where it is established that the court committed an error of law or abused its discretion. As with all questions of law, our review is plenary.
In evaluating the trial court's decision to enter summary judgment, we focus on the legal standard articulated in the summary judgment rule. Pa.R.C.P. 1035.2. The rule states that where there is no genuine issue of material fact and the moving party is entitled to relief as a matter of law, summary judgment may be entered. Where the non-moving party bears the burden of proof on an issue, he may not merely rely on his pleadings or answers in order to survive summary judgment. Failure of a non-moving party to adduce sufficient evidence on an issue essential to his case and on which it bears the burden of proof .... establishes the entitlement of the moving party to judgment as a matter of law. Lastly, we will view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party.
Murphy v. Duquesne Univ. Of the Holy Ghost , 565 Pa. 571, 777 A.2d 418, 429 (2001) (citations and internal quotation marks omitted) (emphasis added).
"A claim of legal malpractice requires that the plaintiff plead the following three elements: employment of the attorney or other basis for a duty; the failure of the attorney to exercise ordinary skill and knowledge; and that the attorney's negligence was the proximate cause of damage to the plaintiff." 412 N. Front St. Assocs., LP v. Spector Gadon & Rosen, P.C. , 151 A.3d 646, 657 (Pa. Super. 2016) (citations omitted).
[T]he Pennsylvania Supreme Court has firmly established the elements in a legal malpractice cause of action and emphasized that proof of actual loss is not satisfied by evidence of remote or speculative harm. Accordingly, to prove actual injury, appellant must demonstrate that she would have prevailed in the underlying action in the absence of appellees' alleged negligence .
Myers v. Robert Lewis Seigle, P.C. , 751 A.2d 1182, 1185 (Pa. Super. 2000), appeal denied , 568 Pa. 665, 795 A.2d 978 (2000) (emphasis added).
Moreover, the trigger for the accrual of a legal malpractice action, for statute of limitations purposes, is not the realization of actual loss, but the occurrence of a breach of duty. Pennsylvania law provides that:
the occurrence rule is used to determine when the statute of limitations begins to run in a legal malpractice action. Under the occurrence rule, *961 the statutory period commences upon the happening of the alleged breach of duty. An exception to this rule is the equitable discovery rule which will be applied when the injured party is unable, despite the exercise of due diligence, to know of the injury or its cause. Pocono [International] Raceway v. Pocono Produce, Inc. , 503 Pa. 80, 85, 468 A.2d 468, 471 (1983). Lack of knowledge, mistake or misunderstanding, will not toll the running of the statute. Id. 503 Pa. at 85, 468 A.2d at 471.
Pennsylvania favors strict application of the statutes of limitation. Accordingly, the statute of limitations in a legal malpractice claim begins to run when the attorney breaches his or her duty, and is tolled only when the client, despite the exercise of due diligence, cannot discover the injury or its cause.
Wachovia Bank, N.A. v. Ferretti , 935 A.2d 565, 572-73 (Pa. Super. 2007) (first emphasis in original; other emphases added here; some citations omitted).
The discovery rule is an exception to the requirement that a complaining party must file suit within the statutory period. The discovery rule provides that where the existence of the injury is not known to the complaining party and such knowledge cannot reasonably be ascertained within the prescribed statutory period, the limitations period does not begin to run until the discovery of the injury is reasonably possible. The statute begins to run in such instances when the injured party possesses sufficient critical facts to put him on notice that a wrong has been committed and that he need investigate to determine whether he is entitled to redress. The party seeking to invoke the discovery rule bears the burden of establishing the inability to know that he or she has been injured by the act of another despite the exercise of reasonable diligence.
Meehan v. Archdiocese of Philadelphia , 870 A.2d 912, 919 (Pa. Super. 2005), appeal denied , 584 Pa. 708, 885 A.2d 43 (2005) (citations omitted; emphasis added).
Here, Appellant contends that Attorney Mullineaux concealed defective pleadings by fraud. (See Appellant's Brief, at 40-45).
Fraudulent conduct is defined as a misrepresentation fraudulently uttered with the intent to induce the action undertaken in reliance upon it to the damage of the victim. A person asserting fraud, therefore, must establish: (1) a misrepresentation, (2) scienter on behalf of the misrepresenter, (3) an intention by the maker that the recipient will be induced to act, (4) justifiable reliance by the recipient upon the misrepresentation; and (5) damage to the recipient.
Banks v. Jerome Taylor & Assocs. , 700 A.2d 1329, 1333 (Pa. Super. 1997), appeal denied , 555 Pa. 695, 723 A.2d 668 (1998) (citations and internal quotation marks omitted).
The governing principles relevant to the establishment of a claim of estoppel based on fraud or concealment are as follows. Where, through fraud or concealment, the defendant causes the plaintiff to relax his vigilance or deviate from his right of inquiry, the defendant is estopped from invoking the bar of the statute of limitations. Moreover, defendant's conduct need not rise to fraud or concealment in the strictest sense, that is, with an intent to deceive; unintentional fraud or concealment is sufficient. Mere mistake, misunderstanding or lack of knowledge is insufficient however, and the burden of proving such fraud or concealment, by evidence *962 which is clear, precise and convincing, is upon the asserting party.
Molineux v. Reed , 516 Pa. 398, 532 A.2d 792, 794 (1987) (citations and internal quotation marks omitted) (emphasis added).
[T]he question of when a statute of limitations runs is a matter typically decided by the trial judge as a matter of law. This Court has held that the determination of when the statute of limitations has run on a claim for legal malpractice is usually a question of law for the trial judge, unless the issue involves a factual determination. Glenbrook Leasing Co. v. Beausang , 839 A.2d 437, 444 (Pa. Super. 2003) (citing Fiorentino v. Rapoport , 693 A.2d 208, 219 (Pa. Super. 1997) ).
* * *
[T]here are [very] few facts which diligence cannot discover, but there must be some reason to awaken inquiry and direct diligence in the channel in which it would be successful. This is what is meant by reasonable diligence. Put another way, [t]he question in any given case is not, what did the plaintiff know of the injury done him? [B]ut, what might he have known, by the use of the means of information within his reach, with the vigilance the law requires of him? ... Under this test, a party's actions are evaluated to determine whether he exhibited those qualities of attention, knowledge, intelligence and judgment which society requires of its members for the protection of their own interest and the interest of others.
Therefore, when a court is presented with the assertion of the discovery rule[']s application, it must address the ability of the damaged party, exercising reasonable diligence, to ascertain that he has been injured and by what cause. Since this question involves a factual determination as to whether a party was able, in the exercise of reasonable diligence, to know of his injury and its cause, ordinarily, a jury is to decide it. Where, however, reasonable minds would not differ in finding that a party knew or should have known on the exercise of reasonable diligence of his injury and its cause, the court determines that the discovery rule does not apply as a matter of law.
O'Kelly v. Dawson , 62 A.3d 414, 419-21 (Pa. Super. 2013) (emphases added) (some internal citations and quotation marks omitted).
Applying these principles to the issues on appeal, we conclude there is no substantive basis to dispute that the alleged occurrence of legal malpractice would have taken place in 2001, when Attorney Mullineaux purportedly omitted factual support for the slamming allegation in CNI's counterclaim to WorldCom's original complaint. Therefore, under either the two-year limitation period for a tort, or the four-year limitation for a contract claim, CNI's malpractice claims are substantially beyond the statute of limitations.
Nevertheless, CNI argues that its cause of action survives the expiration of the limitations period. (See Appellant's Brief, at 13). Specifically, CNI asserts that its principals, Willis and Cooke, were lulled into a false sense of security by Mullineaux's fraudulent concealment of his "pleading error." CNI maintains that Appellees should be prevented from invoking the statute of limitations by "the doctrines of equitable estoppel and equitable tolling[.]" (id. at 37; see id. at 37-40).
Equitable estoppel is a doctrine that prevents one from doing an act differently than the manner in which another was induced by word or deed to expect. A doctrine sounding in equity, equitable *963 estoppel recognizes that an informal promise implied by one's words, deeds or representations which leads another to rely justifiably thereon to his own injury or detriment may be enforced in equity.
[Equitable estoppel] arises when one by his acts, representations, or admissions, or by his silence when he ought to speak out, intentionally or through culpable negligence induces another to believe certain facts to exist and such other rightfully relies and acts on such belief, so that he will be prejudiced if the former is permitted to deny the existence of such facts. When estoppel is established, the person inducing the belief in the existence of a certain state of facts is estopped to deny that the state of facts does in truth exist, aver a different or contrary state of facts as existing at the same time, or deny or repudiate his facts, conduct, or statements.
There are two essential elements to estoppel: inducement and reliance. The inducement may be words or conduct and the acts that are induced may be by commission or forbearance provided that a change in condition results, causing disadvantage to the one induced. More important, the law requires that[:]
There can be no equitable estoppel where the complainant's act appears to be rather the result of his own will or judgment than the product of what the defendant did or represented. The act must be induced by, and be the immediate or proximate result of, the conduct or representation, which must be such as the party claiming the estoppel had a right to rely on. The representation or conduct must of itself have been sufficient to warrant the action of the party claiming the estoppel. If notwithstanding such representation or conduct he was still obliged to inquire for the existence of other facts and to rely on them to sustain the course of action adopted, he cannot claim that the conduct of the other party was the cause of his action and no estoppel will arise. Where there is no concealment, misrepresentation, or other inequitable conduct by the other party, a party may not properly claim that an estoppel arises in his favor from his own omission or mistake. Estoppel cannot be predicated on errors of judgment by person asking the benefit.
Price v. Chevrolet Motor Div. of Gen. Motors Corp. , 765 A.2d 800, 807-08 (Pa. Super. 2000) (citations omitted).
Here, on independent review, we conclude that the trial court correctly determined that equitable estoppel does not toll the statute of limitations. Appellant still had the duty of due diligence in the management of its corporate litigation.
The decisive issue is "what might [Appellant] have known, by the use of the means of information within [its] reach, with the vigilance the law requires of [it.]" O'Kelly , supra at 420.
In this case, both of CNI's principals concede they received copies of the court opinions at issue, but did not bother to read them, even though they admit to attending board meetings where the opinions were discussed, and presumably, evaluated. We agree with the conclusion of the trial court that CNI's principals failed to exercise due diligence in not reading either of the two opinions.
CNI repeatedly reminds us of its principals' lack of formal education beyond high school, to explain their inaction. Their pleas of ignorance, or at least of lack of sophistication in legal business matters, erroneously equate the lack of formal education *964 with deficiency of managerial expertise.[12] The trial court correctly observes that "lack of knowledge, mistake or misunderstanding do not toll the running of the statute of limitations." (Trial Ct. Op., at 6) (citation omitted).
As a matter of general rule, a party asserting a cause of action is under a duty to use all reasonable diligence to be properly informed of the facts and circumstances upon which a potential right of recovery is based and to institute suit within the prescribed statutory period. Thus, the statute of limitations begins to run as soon as the right to institute and maintain a suit arises; lack of knowledge, mistake or misunderstanding do not toll the running of the statute of limitations , Nesbitt v. Erie Coach Co. , 416 Pa. 89, 204 A.2d 473 (1964) [ ]; even though a person may not discover his injury until it is too late to take advantage of the appropriate remedy, this is incident to a law arbitrarily making legal remedies contingent on mere lapse of time. Once the prescribed statutory period has expired, the party is barred from bringing suit unless it is established that an exception to the general rule applies which acts to toll the running of the statute.
Pocono Int'l Raceway, Inc. v. Pocono Produce, Inc. , 503 Pa. 80, 468 A.2d 468, 471 (1983) (internal quotation marks and most case citations omitted) (emphasis added).
In any event, Appellant overlooks the reality that Willis and Cooke by their own account ran a nationwide corporation, which it further contends "was about to go public." (Appellant's Brief, at 19). They claim they should have received millions of dollars in salaries.
"Where, however, reasonable minds would not differ in finding that a party knew or should have known on the exercise of reasonable diligence of his injury and its cause, the court determines that the discovery rule does not apply as a matter of law." O'Kelly , supra at 421 (internal citation omitted).
Moreover, Appellant offers no satisfactory explanation why Willis and Cooke could ignore the first two bankruptcy related decisions with relative equanimity, but find a Eureka moment in the twenty-four page Second Circuit opinion castigating Mullineaux for the relatively trivial error of not keeping his email address current, even while conceding that Mullineaux had met every requirement of Fed.R.App.P. 4(a)(6) (Reopening the Time to File an Appeal.) for the requested relief.[13]
On independent review, we conclude that the trial court was well within its scope of discretion in deciding that Willis and Cooke, and therefore, CNI, failed "to use all reasonable diligence to be properly informed of the facts and circumstances upon which a potential right of recovery is based and to institute suit within the prescribed statutory period." Pocono Int'l Raceway , supra at 471 (citations omitted). Appellant did not meet its burden to establish it was unable to know it had been injured despite the exercise of reasonable *965 diligence. See Meehan , supra at 919. The trial court correctly determined that the statute of limitations had expired without applicable exception. Appellant's first claim merits no relief.
Appellant's second claim merits no relief either. In an overlapping argument, CNI claims the trial court failed to construe facts in its favor and toll the statute of limitations. This is simply untrue, and belied by the record before us. For the reason already discussed, the trial court correctly decided that the statute of limitations applied.
In its third claim, Appellant asserts that actionable breaches of the standard of care, by failing to correct previous misrepresentations, occurred in 2013. (See Appellant's Brief, at 63-65). Appellant offers no controlling authority whatsoever in support of this claim. (See id. ). Therefore, the claim is waived. See Pa.R.A.P. 2119(a), (b).
Moreover, it would not merit relief. Under the occurrence rule, the statute of limitations period is triggered by the first act of alleged malpractice, not the last. See Wachovia Bank , supra at 572-73 (statute of limitations in legal malpractice claim begins to run when attorney breaches his or her duty, and is tolled only when client, despite exercise of due diligence, cannot discover injury or its cause). There is no "re-set" button to start the limitations period all over again.
In fact, to do so would defeat the fundamental purpose of the statute of limitations scheme, which is to avoid stale claims. Over time, memories fade, witnesses may disappear or die, and evidence may be lost. Appellant's third claim is unsupported and merits no relief.
Finally, in its fourth issue, Appellant asserts a claim for fees and costs. (See Appellant's Brief, at 65-67). Again, Appellant offers no controlling authority in support of its entitlement. See e.g. , 42 Pa.C.S.A. § 2503. Appellant fails to develop a factual argument for fees and costs, other than the bald statement that "Mullineaux received a great deal of money from Plaintiff which should be recoverable as part of the damages for his deficient conduct that breached the standard of care." (Appellant's Brief, at 66). Appellant's claims are barred by the statute of limitations. It is not entitled to recover fees for claims that are barred.
Moreover, the issue would not merit relief. "Under the American Rule, applicable in Pennsylvania, a litigant cannot recover counsel fees from an adverse party unless there is express statutory authorization, a clear agreement of the parties, or some other established exception." Trizechahn Gateway LLC v. Titus , 601 Pa. 637, 976 A.2d 474, 482 (2009) (citation omitted). See also 42 Pa.C.S.A. § 2503(10) (providing that litigant is entitled to attorneys' fees as part of taxable costs, only in circumstances specified by statute heretofore or hereafter enacted).
Our review differs in certain respects from the reasoning of the trial court. However, we may affirm the trial court's decision on any legal basis. See Commonwealth v. Torres , 176 A.3d 292, 296 n.5 (Pa. Super. 2017).
Judgment affirmed.

The law firm of Ratner & Prestia, P.C., although also a named defendant, has been dismissed from this case. (See Trial Court Opinion, 6/01/17, at 1).

Further complicating review, Appellant's brief is substantially non-compliant, as accurately observed by counsel for Mullineaux and Astor Weiss. (See Brief for Appellees Mullineaux and Astor Weiss Kaplan & Mandel, at 11 n.6).

For the leading case regarding the Filed Rate Doctrine in the telecommunications field, see Am. Tel. & Tel. Co. v. Cent. Office Tel., Inc. , 524 U.S. 214, 221-22, 118 S.Ct. 1956, 141 L.Ed.2d 222 (1998) (affirming applicability of Filed Tariff Doctrine).

Mullineaux was with Ratner & Prestia from 2001-2003. As previously noted, claims against Ratner & Prestia were ultimately dismissed, and it is not a party in this appeal. In 2003, Mullineaux joined the firm of defendants/Appellees, Flamm Walton PC (2003-2008) and later Astor Weiss Kaplan & Mandel LLP (2008 until the present appeal). Mullineaux represented CNI from 2001 to 2013.

See 47 U.S.C.A. § 214, 47 U.S.C.A. § 258.

WorldCom management responded to the general collapse of the telecom industry and the rapid erosion of its own revenue base by creating billions of dollars of fake revenue, ultimately resulting in the largest bankruptcy filing in United States history to that time. WorldCom's Chief Executive Officer, Bernard J. Ebbers, was eventually convicted of conspiracy, securities fraud, and related crimes, and sentenced to twenty-five years' imprisonment. See United States v. Ebbers , 458 F.3d 110, 112 (2d Cir. 2006), cert. denied , 549 U.S. 1274, 127 S.Ct. 1483, 167 L.Ed.2d 244 (2007).

In his deposition, Mullineaux claimed he could only present a generic allegation of slamming because CNI denied his request for funds to investigate and develop facts in support of the counterclaim. Mullineaux asserted that when CNI refused to provide funding for an investigation, he included only the boilerplate slamming claim.

Mullineaux denies this alleged failure to disclose. (See Mullineaux Deposition, 9/30/16, at 332, RR2416a).

We note that the dissent characterized Mullineaux's mistake as a "garden variety" attorney error. In re WorldCom, Inc. , 708 F.3d 327, 343 (2d Cir. 2013) (Lynch, J. dissenting).

Both parties engaged lawyers to prepare expert opinions supporting their respective litigation positions. (See Expert Opinion of Samuel C. Stretton, Esq. to Francis Malofiy, Esq., 10/03/16; see also Expert Report of Scott J. Rubin, Esq. to [the late] Arthur W. Lefco, Esq., 12/05/16).

In one of many failures to comply with proper appellate procedure, counsel for Appellant appends to the Statement of Questions Involved extra paragraphs of procedurally unauthorized argument, but also without complying with the requirement to indicate how the trial court ruled on each question. (See Appellant's Brief, at 8-10); Pa.R.A.P. 2116 ; see also Commonwealth v. Briggs , 608 Pa. 430, 12 A.3d 291, 343 (2011), cert. denied , 565 U.S. 889, 132 S.Ct. 267, 181 L.Ed.2d 157 (2011) (explaining that briefing requirements represent studied determination by our Supreme Court and its rules committees of most efficacious manner of judicial review).

Some of the most successful founders and executives of America's best-known corporations did not graduate from college, e.g. , Bill Gates, (Microsoft); Mark Zuckerberg, (Facebook); Larry Ellison, (Oracle); Steve Jobs, (Apple); and Anna Wintour, (Vogue/Conde Nast). Thomas Edison never attended any technical school, college or university. He was home schooled by his mother. In addition to his inventions, he founded the forerunner of General Electric.

As previously observed, the dissent characterized Mullineaux's mistake as a "garden variety" attorney error. In re WorldCom, Inc. , 708 F.3d 327, 343 (2d Cir. 2013) (Lynch, J. dissenting).