J-A07035-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| AMERICAN MUSHROOM COOPERATIVE, F/D/B/A EASTERN MUSHROOM MARKETING COOPERATIVE, INC, MONTEREY MUSHROOMS, INC., GIORGI MUSHROOM CO., GIORGIO FOODS, INC., JOHN PIA,  BELLA MUSHROOM FARMS, BROWNSTONE MUSHROOM FARMERS, INC., TO-JO FRESH MUSHROOMS, COUNTRY FRESH MUSHROOM CO., KAOLIN MUSHROOM FARMS, INC., MODERN MUSHROOM FARMS, INC., PHILLIPS MUSHROOM FARMS, INC., LOUIS M. MARSON, JR., INC., GALE FERANTO T/A BELLA MUSHROOM FARMS AND PETE FERANTO T/A BELLA MUSHROOM FARMS | : : : : : : : : : : : : : : : : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA <br><br><br><br><br>No. 1780 EDA 2022 |
| v. | : : : : | |
| SAUL EWING ARNSTEIN & LEHR, LLP, F/K/A SAUL EWING AND BERGER MONTAGUE, P.C. | : : : : : : | |
| APPEAL OF:  GIORGI MUSHROOM COMPANY AND GIORGIO FOODS, INC. | : : : | |

Appeal from the Order Entered June 13, 2022
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  200302211

| | | |
|---|---|---|
| AMERICAN MUSHROOM COOPERATIVE, F/D/B/A EASTERN MUSHROOM MARKETING COOPERATIVE, INC, MONTEREY MUSHROOMS, INC., GIORGI MUSHROOM CO., GIORGIO FOODS, INC., JOHN PIA,  BELLA MUSHROOM | : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |

FARMS, BROWNSTONE MUSHROOM
FARMERS, INC., TO-JO FRESH
MUSHROOMS, COUNTRY FRESH
MUSHROOM CO., KAOLIN
MUSHROOM FARMS, INC., MODERN
MUSHROOM FARMS, INC., PHILLIPS
MUSHROOM FARMS, INC., LOUIS M.
MARSON, JR., INC., GALE FERANTO
T/A BELLA MUSHROOM FARMS AND
PETE FERANTO T/A BELLA
MUSHROOM FARMS

        v.

SAUL EWING ARNSTEIN & LEHR,
LLP, F/K/A SAUL EWING AND
BERGER MONTAGUE, P.C.

APPEAL OF:  AMERICAN MUSHROOM
COOPERATIVE, ETC., ET AL.

: No. 1783 EDA 2022

Appeal from the Order Entered June 13, 2022
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  200302211

BEFORE:    DUBOW, J., McLAUGHLIN, J., and McCAFFERY, J.

MEMORANDUM BY McCAFFERY, J.:        **FILED APRIL 5, 2023**

In this legal malpractice matter, plaintiffs Giorgi Mushroom Company

and Giorgio Foods, Inc. (Giorgio), as well as American Mushroom Cooperative,

*etc*., *et al*. (AMC) (collectively, Appellants),[1] appeal from the order entered in

_____

[1] Giorgi and AMC are represented by different counsel and filed separate
notices of appeal.  This Court consolidated their appeals, and they have
submitted a joint brief.

the Philadelphia County Court of Common Pleas, granting the motion for judgment on the pleadings filed by defendant Saul Ewing Arnstein & Lehr, LLP, f/k/a Saul Ewing (Appellee).[2] The trial court found Appellants' tort and contract claims were barred by the statutes of limitations.[3] On appeal, Appellants avers the trial court erred in: (1) not granting their requests to amend their pleadings in order to address an email exchange, which would show Appellee's deception and thus invoke equitable tolling doctrines; and (2) finding their claims were time-barred, in part by considering exhibits improperly attached to Appellee's motion for judgment on the pleadings. We affirm.

---

[2] Appellants' complaint named two defendants: Appellee and the law firm Berger Montague, P.C. (Berger Montague). Upon the parties' stipulation, the trial court **severed** and stayed all claims against Berger Montague until further order. Order, 12/21/20.

Although the underlying order disposed of only the claims against Appellee, because the trial court had severed the claims against the second defendant, we determine the order is final for appeal purposes. **See** Pa.R.A.P. 341(a) (an appeal may be taken as of right from a final order), (b)(1) (a final order disposes of all claims and of all parties); **Stevenson v. Gen. Motors Corp.**, 521 A.2d 413, 419 (Pa. 1987) (a severance permits "one separate cause of action [to be] fully disposed of while others remain independently unresolved," and "a severance of actions effects a splitting of them into one or more independent actions for all purposes, including trial and appellate procedure"). **See also McCutcheon v. Phila. Elec. Co.**, 788 A.2d 345, 350 n.8 (Pa. 2002) (summarizing same).

[3] **See** 42 Pa.C.S. §§ 5524(7) (action founded on negligent, intentional, or otherwise tortious conduct must be commenced within two years), 5525(a)(1) (action upon a contract must be commenced within four years).

- 3 -

## I. Alleged Facts

We glean the following undisputed facts from the trial court's opinion and the pleadings. Appellant AMC, formerly known as the Eastern Mushroom Marketing Cooperative, "was formed in 2000 as an agricultural cooperative under the purview of the federal Capper-Volstead Act[.]"[4] **See** Trial Ct. Op., 6/13/22, at 1-2. According to Appellants, the Act

> was intended to exempt farmers and direct producers of agricultural products from prohibitions against fixing prices[,] which is otherwise prohibited by the Sherman Antitrust Act.[5] . . . [T]he Capper-Volstead Act allows farmers of agricultural commodities to join together in associations, or cooperatives, to go to market and counterbalance the overwhelming market power of the buyers."[ ]

**Id.**, *citing* Appellants' Complaint, 4/24/20, at ¶¶ 30-31. Appellant Giorgio is a Pennsylvania corporation and was a member of AMC. Appellants' Complaint at ¶¶ 14-15. Appellee law firm began representing and advising AMC at its formation.

One of Appellants' claims is that Appellee improperly advised and approved "the inclusion of certain mushroom **distributors** as members of

---

[4] 7 U.S.C.A. §§ 291-292. The 2004 complaint, by the United States Department of Justice (DOJ) against AMC (discussed **infra**), described AMC as "the nation's largest mushroom cooperative" and stated AMC members "accounted for" more than 60% of the nation's mushroom sales "during the 2001-2002 growing season." Complaint, **U.S. v. E. Mushroom Mktg. Coop., Inc.**, Civil Action No. 04-CV-5829, 12/16/04, at 1, Exh. 13 to Appellee's Answer with New Matter, 7/30/20.

[5] 15 U.S.C. §§ 1-38.

[AMC], when they were not mushroom '**growers**' as required under [the strict prerequisites[6] of] the Capper-Volstead Act." Trial Ct. Op. at 3 (emphases added). Appellants aver these improper membership approvals caused AMC to be non-compliant with, and consequently ineligible for, the Act's provisions. *Id.* at 6.

We also summarize that Appellee advised Appellants during their 2001-2002 purchases or leases of six farms, located across the United States, in connection with "a major mushroom producer['s]" bankruptcy proceedings. *See* Appellants' Complaint at ¶¶ 46, 51. Appellants then resold or leased these properties with deed restrictions/leases that prohibited the new owners/lessees from producing mushrooms on the properties.[7] *Id.* at ¶ 51. The parties and trial court have referred to this overall scheme as the "Supply Control Program." *See* Trial Ct. Op. at 3.

In 2003, the DOJ began an approximately 18 month investigation of AMC's qualifications as a cooperative, as well as potential antitrust violations

---

[6] *See* Appellants' Complaint at ¶ 39.

[7] Appellants averred: "By limiting the capacity to grow and produce mushrooms, [AMC] could better control the production, handling, and marketing of mushrooms." Appellants' Complaint at ¶ 47. They also explained they resold or sublet some of these properties at a loss. *Id.* at ¶ 51.

arising from the deed restrictions.[8]  On December 16, 2004, the DOJ filed an antitrust complaint in the federal District Court for the Eastern District of Pennsylvania.[9]  Four days later, AMC agreed to a consent decree, under which it would not admit liability but agreed to nullify the deed restrictions and "reverse and dismantle the Supply Control Program."  *See* Trial Ct. Op. at 3-4; Appellants' Complaint at ¶ 52.  Final judgment in this DOJ matter was entered on September 9, 2005.[10]

Subsequently, direct purchasers of mushrooms (retailers and distribution outlets) filed lawsuits against AMC, challenging the prior deed restrictions and Supply Control Program.  *See* Trial Ct. Op. at 4; Appellants' Complaint at ¶ 53.  "These cases were consolidated, and a Consolidated Amended Class Action Complaint was filed in June 2006[,]" similarly in the

---

[8] *See In re Mushroom Direct Purchaser Antitrust Litig.*, 621 F.Supp.2d 274, 280 (E.D.Pa. 2009) (*Antitrust Litig.*) (class action lawsuit, discussed *infra*); Appellants' Complaint at 4.

While a subsequent federal court opinion stated the investigation was 18 months long, *Antitrust Litig.*, 621 F.Supp.2d at 280, Appellee's new matter suggested the investigation lasted 20 months.  *See* Answer with New Matter at 61, 64 (stating Appellee confirmed there was a DOJ investigation on February 4, 2003, and DOJ made settlement offer on October 15, 2004).  For ease of discussion, we will refer to this investigation as lasting 18 months.

[9] The DOJ also averred AMC "conspire[d] to prevent independent, nonmember farmers from competing with [AMC] or its members."  DOJ's Complaint at 2.

[10] *Antitrust Litig.*, 621 F.Supp.2d at 280.

Eastern District of Pennsylvania.[11]  Trial Ct. Op. at 4.  On March 26, 2009, the federal court concluded, pertinently, that "the uncontested nature of" one AMC member as a **non**-farmer rendered the entire AMC cooperative ineligible for Capper-Volstead immunity.  ***Antitrust Litig.***, 621 F.Supp.2d at 284. According to Appellants, AMC and its members have since entered into settlements with class action plaintiffs, expending more than $50 million in legal fees, litigation expenses, and damages.  Appellants' Complaint at 5 & ¶ 76.

Finally, we note the following relevant averments in AMC's complaint concerning Berger Montague, the second named defendant in this action. Berger Montague began representing AMC in 2006 in the class action. Appellants' Complaint at ¶ 57.  In May of 2007, Berger Montague put Appellee "on notice of a potential [legal malpractice] claim against it" by Appellants. ***Id.*** at ¶ 59.  Two years later, on May 7, 2009, Appellants and Appellee executed a tolling agreement that was drafted by Berger Montague.  ***Id.*** at ¶¶ 60, 97.  This agreement generally provided that the time period, beginning that same day, shall not be included in calculating statutes of limitations. Tolling Agreement, 5/7/09, at 1, Exh. B to Appellants' Complaint.

## II.  Procedural History

---

[11] The class action also claimed AMC illegally conspired with non-cooperatives to fix prices. ***Antitrust Litig.***, 621 F.Supp.2d at 283.

As stated above, Appellants and the other plaintiffs filed the underlying complaint on April 24, 2020, raising claims of legal malpractice sounding in both tort and contract.[12] They averred Appellee: (1) improperly approved non-mushroom growers to be members of the cooperative, resulting in the federal court's conclusion, in the DOJ matter, that AMC did not meet the requirements of the Capper-Volstead Act; and (2) improperly advised the Supply Control Program would be permissible under the Capper-Volstead exemptions.[13] Appellants' Complaint at 4.

Appellee filed an answer and new matter, asserting Appellants' tort and contract claims were time-barred under the statutes of limitations.[14] Appellee's Answer with New Matter at 42. Appellee further contended the

_____

[12] One month earlier, on March 17, 2020, Appellants filed a praecipe to issue a writ of summons.

[13] Appellants also pleaded legal malpractice claims against Berger Montague, in the alternative, should Appellants be found to be barred from recovering against Appellee. The complaint averred Berger Montague "repeatedly assured" them their claims against Appellee would be protected by the tolling agreement against any statute of limitations issue. Appellants' Complaint at ¶ 61.

[14] Appellee also averred: (1) it represented AMC only, and all other plaintiffs lacked standing because they did not have an attorney-client relationship with it; (2) Appellee did advise that all cooperative members must grow or produce mushrooms, but AMC "did not follow [this] advice[;]" and (3) Appellee similarly advised "that restrictive covenants and leases prohibiting mushroom product carried potential antitrust risk," but AMC accepted this risk "in exchange for perceived economic benefit." Appellee's Answer with New Matter to Appellants' Complaint, 7/30/20, at 16-17, 41.

tolling agreement offered no relief, as the statutes of limitations expired before it was executed in May of 2009. In support, Appellee maintained the class action and DOJ complaints were filed, respectively, more than two and four years earlier. *Id.* at 42, 68.

Next, on August 16, 2021, Appellee filed the underlying motion for judgment on the pleadings, reiterating its statutes of limitations defense. Appellants filed answers and memoranda in support, both contending, *inter alia*, that while their answers were sufficient to defeat Appellee's motion, they were also requesting, in the alternative, to amend their pleadings to raise equitable tolling doctrines.[15] Specifically, Appellants would address an October 28, 2004, email exchange between AMC executives and Appellee's law partner, Michael Finio, Esquire (Attorney Finio), made approximately "two weeks after [the] DOJ allegedly proposed the consent decree/judgment.[ ]" *See* Appellants' Brief at 29. Attorney Finio first wrote:

> As I have told Bill, I do not think (6) is needed, since it would just state the obvious and would delay getting this done. DOJ could of course in the future pursue any NEW activities, and this will

---

[15] *See* AMC's Memorandum of Law in Support of Opposition to Motion of Appellee for Judgment on the Pleadings, 9/21/21, at 27-28 n.9, 39; Giorgio's Response in Opposition to Motion for Judgment on the Pleadings of Appellee, 9/21/21, at 5 n.1.

Appellants aver that after they filed their complaint and answer to Appellee's new matter, "hundreds of thousands of pages of documents were produced in discovery." Appellants' Brief at 23. However, Appellants did not address why the email exchange, which included AMC executives, would not have already been in AMC's possession.

always remain the case. I trust you all understand that **this conclusion is essentially a blessing of 99.99% of the legal advice given to you about the conduct of [AMC's] affairs over the last few years. This is a tremendous outcome**.

Email Exchanges, 10/28/04, Exh. A to Giorgio's Response in Opposition to Motion for Judgment on the Pleadings of Appellee (emphasis added). On that same day, an individual named Dave Carroll replied:

> I vote to accept the proposal as amended and do not think we need to push the issue in number 6. It is a great outcome.

*Id.* Appellants argued these emails would show: (1) Attorney Finio "sold [AMC] on the Proposed Judgment," by characterizing the DOJ action as a "blessing" of Appellee's legal advice; but (2) this advice contradicted Appellee's present argument, that the DOJ action was a "trigger that should have alerted" Appellants to a potential legal malpractice claim. Giorgio's Response in Opposition to Motion for Judgment on the Pleadings at 5 n.1.

On December 15, 2021, the trial court granted in part Appellee's motion for judgment on the pleadings, finding some of Appellants' claims — those relating to the Supply Control Program — were time-barred. The court, however, denied Appellee's remaining requested relief. Both Appellants and Appellee filed motions for reconsideration. Appellants again argued, *inter alia*, that they should be permitted to amend their pleadings to address Attorney Finio's October 28, 2004, email.

On June 13, 2022, the trial court granted Appellee's motion for reconsideration, vacated the December 15, 2021, order, and granted

Appellee's motion for judgment on the pleadings in full. The court now concluded all of the plaintiffs' claims were time barred. Pertinently, the court found Appellants' argument concerning Attorney Finio's 2004 email to be "puffery," where Appellants could not "overcome the cold hard fact that [AMC] consented to a public judgment that overturned the entire Supply Control Program, which was allegedly undertaken based on [Appellee's] advice." Trial Ct. Op. at 8 n.22. The court thus entered judgment in favor of Appellee. Both Appellants timely appealed.[16]

### III. Statement of Questions Involved

Appellants present two issues for our review:

1. Did the trial court err in repeatedly failing to grant the requests [of Appellants] for leave to amend their pleadings, in order to clarify the existence of certain issues of fact concerning the application of equitable tolling doctrines?

2. Even absent the requested amendment, in applying the standard of review for motions for judgment on the pleadings, did the trial court err in determining that the statute of limitations bars [Appellants'] claims, without recognizing existing issues of fact?

Appellants' Brief at 5.

### IV. Standard of Review and General Law on Statute of Limitations

We first consider the relevant guiding principles and standard of review:

Entry of judgment on the pleadings is permitted under Pennsylvania Rule of Civil Procedure 1034, which provides that

---

[16] The trial court did not direct Appellants to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal.

- 11 -

"after the pleadings are closed, but within such time as not to unreasonably delay trial, any party may move for judgment on the pleadings." Pa.R.C.P. 1034(a). A motion for judgment on the pleadings is similar to a demurrer. It may be entered when there are no disputed issues of fact and the moving party is entitled to judgment as a matter of law.

Appellate review of an order granting a motion for judgment on the pleadings is plenary. The appellate court will apply the same standard employed by the trial court. A trial court must confine its consideration to the pleadings and relevant documents. The court must accept as true all well pleaded statements of fact, admissions, and any documents properly attached to the pleadings presented by the party against whom the motion is filed, considering only those facts which were specifically admitted.

We will affirm the grant of such a motion only when the moving party's right to succeed is certain and the case is so free from doubt that the trial would clearly be a fruitless exercise.

*Coleman v. Duane Morris, LLP*, 58 A.3d 833, 836 (Pa. Super. 2012) (citations omitted).

A claim of legal malpractice requires a plaintiff to establish:

employment of the attorney or other basis for a duty; the failure of the attorney to exercise ordinary skill and knowledge; and that the attorney's negligence was the proximate cause of damage to the plaintiff.

*Communications Network Int'l v. Mullineaux*, 187 A.3d 951, 960 (Pa. Super. 2018) (citation & quotation marks omitted).

As stated above, the statute of limitations for a negligence action is two years, while an action upon a contract must be commenced within four years. 42 Pa.C.S. §§ 5524(7), 5525(a)(1). "Pennsylvania favors strict application of the statutes of limitation." *Communications Network Int'l*, 187 A.3d at 961 (citation omitted). "[T]he question of when a statute of limitations runs

is a matter typically decided by the trial judge as a matter of law . . . , unless the issue involves a factual determination." *Id.* at 962 (citation omitted). "[T]he trigger for the accrual of a legal malpractice action . . . is not the realization of actual loss, but the occurrence of a breach of duty." *Id.* at 960 (citation omitted).

However, the equitable discovery rule provides an exception, where "the injured party is unable, despite the exercise of due diligence, to know of the injury or its cause." *Communications Network Int'l*, 187 A.3d at 961 (citation omitted). This rule

> "tolls the statute of limitations when an injury or its cause is not reasonably knowable." The purpose of this rule is clear: to "ensure that persons who are reasonably unaware of an injury that is not immediately ascertainable have essentially the same rights as those who suffer an immediately ascertainable injury." The plaintiff's inability to know of the injury must be "despite the exercise of reasonable diligence[.]" . . .

*Rice v. Diocese of Altoona-Johnstown*, 255 A.3d 237, 247 (Pa. 2021) (citations omitted).

Furthermore, our Supreme Court has stated:

The fraudulent concealment doctrine is a distinct but related theory. . . . Fraudulent concealment . . . is rooted in the recognition that fraud can prevent a plaintiff from even knowing that he or she has been defrauded. . . .

\* \* \*

> Where, "through fraud or concealment, the defendant causes the plaintiff to relax his vigilance or deviate from his right of inquiry," the defendant is estopped from invoking the bar of the statute of limitations. Moreover, defendant's conduct need not rise to fraud or

concealment in the strictest sense, that is, with an intent to deceive; unintentional fraud or concealment is sufficient. Mere mistake, misunderstanding or lack of knowledge is insufficient however, and the burden of proving such fraud or concealment, by evidence which is clear, precise and convincing, is upon the asserting party.

[The fraudulent concealment doctrine asks] whether the fraud or concealment "cause[d] the plaintiff to relax his vigilance or deviate from his right of inquiry[.]" . . .

*Rice*, 255 A.3d at 247-48 (citations omitted).

## V. Attorney Finio's October 28, 2004, Email

In their first issue, Appellants assert the trial court erred in not granting their "repeated requests to amend their pleadings."[17] Appellants' Brief at 22. Appellants reiterate their argument that Attorney Finio's October 28, 2004, email was deceptive and "induced [them] into agreeing to . . . the DOJ consent decree . . . by representing that it was 'a tremendous outcome' and '[a] blessing of 99.9% of [Appellee's] legal advice.'" *Id.* at 30. Appellants claim the email message "would have caused 'reasonable minds' to relax their vigilance[.]" *Id.* They thus contend the email message presents an issue of fact as to whether: (1) the DOJ action "should have awakened inquiry and

---

[17] Appellee suggests Appellants failed to "properly present[ ]" this issue to the trial court, because they did not file a separate or standalone petition to amend. Appellee's Brief at 11. However, Appellees do not cite, and we have not discovered, any authority requiring, on pain of waiver, a particular procedure for seeking leave to amend pleadings. *See* Pa.R.C.P. 1033(a) ("A party, either by filed consent of the adverse party **or by leave of court**, may at any time . . . amend the pleading. . . . ").

- 14 -

caused [Appellants] to discover that they had been injured by" Appellee's legal malpractice; or alternatively (2) the "discovery rule" or doctrine of fraudulent concealment should apply to toll the statutes of limitations. *Id.* at 25, 30-31. With respect to the trial court's reasoning, Appellants insist "[t]he pertinent issue . . . is not whether the Finio email was 'puffery,' but whether, intentionally deceptive or not, it . . . created a factual dispute as to whether reasonable minds would be lulled into relaxing their vigilance[.]" *Id.* at 31. Appellants conclude these questions of fact were for the jury, not the court, to decide. *Id.* at 32. We conclude no relief is due.

Appellants "claim that it was [Appellee's] incorrect legal advice[, given from 2000 through 2002,] that led to the improper Membership Approvals of [mushroom] distributors, which caused [AMC] to lose its" protections under the Capper-Volstead Act. Trial Ct. Op. at 6-7. We note Appellants do not identify any particular date or occurrence on which they believe the statutes of limitations should begin to run. Instead, they broadly concede that "without the application of any . . . tolling doctrines, the limitations periods for their malpractice claims would have expired prior to the May 7, 2009 Tolling Agreement[.]" *See* Appellants' Brief at 24.

As stated above, the trial court concluded the statutes of limitations began to run in December of 2004, when AMC agreed to enter the consent decree with the DOJ, under which AMC "was ordered and directed" to nullify the deed restrictions. Trial Ct. Op. at 8 (citation omitted). The court found

that at this time, AMC "knew or should have known that it was injured by [Appellee's] previous, erroneous, antitrust advice regarding the legitimacy of those deed restrictions and the Supply Control Program[.]" *Id.* The court also pointed out AMC "necessarily incurred costs and attorneys' fees in connection with the [DOJ] investigation and the invalidation of the Supply Control Program." *Id.* at 4.

The trial court addressed Appellants' request to amend their pleadings in order to add allegations that Appellee concealed information "or lulled them into a false belief in order to dissuade them from filing suit against" Appellee. Trial Ct. Op. at 8 n.22 (citation omitted). The court rejected Appellants' arguments concerning Attorney Finio's email as "puffery," reasoning Appellants "cannot overcome the cold hard fact that [AMC] consented to a public judgment that overturned the entire Supply Control Program, which" Appellants acknowledge they undertook based on Appellee's advice. *Id.*

The trial court acknowledged the costs and fees AMC later incurred, in connection with the class action, were much greater than those related to the DOJ investigation. Trial Ct. Op. at 8. Nevertheless, the court reasoned, Appellants could not wait until their injuries became "overwhelming before bringing suit." *Id.* Furthermore, the class action, beginning in 2005 and 2006, 'was premised in large part upon the same incorrect advice regarding the Supply Control Program . . . so it does not reset the Statute of Limitations clock on" Appellants' claims. *Id.* at 9-10.

We agree with the trial court's reasoning. Appellants isolate the October 28, 2004, email language — "a tremendous outcome" and a "blessing" — to claim Attorney Finio deceived them into believing the DOJ's investigation was an endorsement or approval of Appellee's legal advice. *See* Appellant's Brief at 30. However, Appellants' argument ignores that the DOJ's proposal followed 18 months of investigation for antitrust violations, and the consent decree required AMC to nullify and "reverse and dismantle" the very activities that were the subject of the investigation. *See* Trial Ct. Op. at 4. Notwithstanding Attorney Finio's earlier email urging AMC to agree to the consent decree, we agree with the trial court that "reasonable minds would not differ in finding" that once AMC accepted the consent decree, Appellants were aware of a potential breach of duty. ***See Communications Network Int'l***, 187 A.3d at 960; Trial Ct. Op. at 8. Accordingly, we do not disturb the court's conclusion that the statutes of limitations for Appellants' tort claims ran in December of 2006, and for their contract claims in December of 2008. Appellants' complaint, filed in April of 2020, is thus time-barred.

Furthermore, we reject Appellants' reliance on the tolling agreement. As they aver in their own complaint, in May of 2007, Berger Montague contacted Appellee on Appellants' behalf "to place the firm on notice of a potential claim against it." Appellants' Complaint at ¶ 59. The tolling agreement was executed two years later, on May 7, 2009. *Id.* at ¶ 60. Where the statute of limitations for a tort claim is two years, we agree with Appellee

that Appellants cannot now claim that in 2007, they lacked "sufficient critical facts to put [them] on notice" of a potential malpractice claim. *See* Appellee's Brief at 12 (citation omitted). For the above reasons, we conclude no relief is due on Appellants' contention that the trial court erred in not granting their request to amend their pleadings. The trial court properly concluded there were no disputed issues of fact and Appellee was entitled to judgment as a matter of law. *See Coleman*, 58 A.3d at 836.

## VI. Appellee's Reliance on Exhibits & Appellants' Admissions

In Appellants' second issue, they again argue the trial court failed to recognize issues of fact and thus erred in determining their claims were barred by the statutes of limitations. In support, they allege Appellee's motion for judgment on the pleadings improperly relied on documents that were: (1) not attached as exhibits by Appellants; or (2) not specifically admitted by Appellants.[18] Appellants' Brief at 33. These documents include: (1) the DOJ's March 31, 2003, Civil Investigative Demands, which requested AMC to provide certain documents and answer interrogatories, and the accompanying cover letter from the DOJ; (2) a March 7, 2001, email from Attorney Finio, which stated "'there will likely not be any firm precedents' for the use of restrictive

---

[18] *See Coleman*, 58 A.3d at 836 (in considering a motion for judgment on the pleadings, a "court must accept as true . . . any documents properly attached to the pleadings presented by the party against whom the motion is filed, considering only those facts which were specifically admitted").

covenants" and thus purportedly showed Appellee's uncertainty in their legal advice; and (3) March 23, 2001, emails from Attorney Finio concerning a request, from Appellant Giorgio, for an opinion letter on the validity of AMC's purchase of a mushroom farm. *Id.* at 38-39, 46-47. Indeed, Appellants maintain, their admissions in their pleadings tended to show they were **not** aware, due to Appellee's legal advice to the contrary, that the Supply Control Program was not protected by the Capper-Volstead Act. *Id.* at 44-45. Appellants also cite an undated "strategic planning meeting in Hershey, Pennsylvania," where one AMC member voiced concern as to whether the deed restrictions would be permitted under the Capper-Volstead Act, and Attorney Finio "shut down any further dialogue" by asking "where the hell did [the AMC member] get [his] law degree." *Id.* at 45 (citation omitted). We conclude no relief is due.

We incorporate our discussion above, especially the trial courts' finding that it was Appellants' agreement, in December of 2004, to the DOJ's proposed consent decree, following an 18-month antitrust investigation, that put Appellants on notice of a potential injury caused by Appellee's deficient legal representation. Appellants' present reliance on emails sent and received three years prior to that date, as well as their arguments concerning admissions in the pleadings, is not persuasive. The trial court properly considered the undisputed averments in the pleadings: that the DOJ investigated AMC, and then filed a lawsuit, for antitrust violations arising from,

*inter alia*, the deed restrictions, and AMC agreed to a consent decree, entered as a final judgment in federal court, under which it was required to nullify the deed restrictions. We find specious Appellants' present argument — that Appellee's statements, in the face of a proposed settlement by the DOJ that required Appellants to nullify the deed restrictions, led Appellants to believe their activities were nevertheless protected under the Capper-Volstead Act. Accordingly, no relief is due.

## VII. Conclusion

For the foregoing reasons, we affirm the order of the trial court granting Appellee's motion for judgment on the pleadings, on the ground that all of Appellants' negligence and contract claims, as against Appellee, are barred by the statutes of limitations.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/05/2023