J-A16040-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| DAVID CLARK, INDIVIDUALLY, AND AS ADMINISTRATOR OF THE ESTATE OF MONICA CLARK, DECEASED | : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellants | : | |
| | : | |
| | : | |
| v. | : | |
| | : | No. 1474 MDA 2018 |
| | : | |
| JEFFREY STOVER, ESQUIRE AND STOVER, MCLAUGHLIN, GERACE, WEYANDT & MCCORMICK, P.C. | : | |

Appeal from the Order Entered August 10, 2018
In the Court of Common Pleas of Huntingdon County Civil Division at
No(s): 2015-1380

BEFORE:   LAZARUS, J., MURRAY, J., and STEVENS*, P.J.E.

MEMORANDUM BY STEVENS, P.J.E.:          **FILED AUGUST 01, 2019**

David Clark and his mother, Monica Clark, ("collectively the Clarks")

appeal from the August 10, 2018, order entered in the Court of Common Pleas

of Huntingdon County granting the motion for summary judgment in favor of

Jeffery Stover, Esquire, and his law firm, Stover, McLaughlin, Gerace,

Weyandt & McCormick, P.C. (collectively "Appellees").[1] After a careful review,

we affirm.

_____

[1] This appeal was filed by David Clark and Monica Clark. However, on January
24, 2019, during the pendency of this appeal, Monica Clark passed away and
the Huntingdon County Register of Wills ("Register of Wills") granted Letters
Testamentary to David Clark. Thereafter, Appellees filed an application

_____

*   Former Justice specially assigned to the Superior Court.

The relevant facts and procedural history are as follows: On July 14, 2008, Daniel M. Clark ("Decedent") passed away, and he was survived by four siblings, including David Clark, as well as his mother, Monica Clark. On February 6, 2008, Decedent executed a Last Will and Testament ("the Will") bequeathing to Leslie A. McDermott, who was a long-time employee of Decedent, the following: his personal belongings, a sum of $150,000.00, his accounting business, an option to purchase his office and apartment building, and his interest in CMS Computer Services. Further, the Will bequeathed the sum of $25,000.00 to Christina M. Reynolds, as well as the sum of $25,000.00 to Randi I. Beatty, both of whom were employees of Decedent. The Will provided that the remainder of Decedent's Estate was to be distributed equally to the Humane Society of Huntingdon County and the Retirement Assistant Care for Equines Fund ("R.A.C.E. Fund"). Decedent made no provision for his family in the Will. Decedent appointed the following individuals as Co-Executors of the Will: Edson S. Crafts, III, Leslie A. McDermott, and Lawrence

---

seeking to strike the Clarks' brief on the basis Monica Clark is no longer a proper party to the appeal. However, David Clark, in his capacity as personal representative of Monica Clark's Estate, filed an application with this Court seeking to be substituted as a party. Accordingly, we deny Appellees' application to strike and grant the application for substitution of a party. *See* Pa.R.A.P. 502(a)("If a party dies after a notice of appeal or petition for review is filed or while a matter is otherwise pending in an appellate court, the personal representative of the deceased party may be substituted as a party on application filed by the representative or by any party with the prothonotary of the appellate court."). We have amended the caption accordingly.

L. Newton. Thereafter, Lawrence L. Newton renounced his right to serve as Co-Executor and, thus, the Register of Wills granted Letters Testamentary to Edson S. Crafts, III, and Leslie A. McDermott and admitted to probate the Will on August 4, 2008.

Thereafter, in September of 2008, David Clark retained Attorney Stover, and on October 17, 2008, he filed a *caveat* objecting to the Register of Wills' granting of Letters Testamentary and Probate. Specifically, David Clark averred Decedent had executed prior Wills, including one on November 12, 2007, that had named him as a beneficiary. He also averred he had been named as the beneficiary on several of Decedent's life insurance policies, but that Decedent changed the life insurance beneficiary designations in November of 2007. David Clark averred Decedent executed the February 6, 2008, Will and changed the life insurance beneficiary designations in 2007 because of the undue influence of Leslie A. McDermott.

Pursuant to 20 Pa.C.S. § 907, David Clark filed for certification to the Orphans' Court. Following hearings on August 5, 2009, and September 3, 2009, the Orphans' Court dismissed David Clark's claims on November 17, 2009. David Clark filed an appeal to this Court, and we affirmed on May 19, 2011.[2] *In re: Daniel M. Clark*, 988 MDA 2010 (Pa.Super. filed 5/19/11)

---

[2] On appeal, David Clark claimed the Orphans' Court erred in rejecting his argument that Leslie A. McDermott exerted undue influence and/or Decedent was of a weakened intellect when he executed the Will in February 6, 2008;

(unpublished memorandum). David Clark filed a petition for allowance of appeal, which our Supreme Court denied on June 8, 2012.

Meanwhile, on July 13, 2010, Monica Clark, who was also represented by Attorney Stover, filed an action against Decedent's Estate[3] alleging that, prior to his death, Decedent converted life insurance benefits, as well as tangible personal and business property of Robert Clark,[4] who predeceased Decedent on November 6, 2003. Monica Clark averred the benefits and property lawfully belonged to her, and that, prior to his death, Decedent made misrepresentations indicating he would invest her share of Robert Clark's Estate on her behalf.[5] Decedent's Co-Executors filed a motion for summary judgment averring, *inter alia*, that Monica Clark failed to file her conversion lawsuit within the applicable two years statute of limitations. In December of

---

the Orphans' Court erred in discounting the testimony of his expert, John DeCarle; and the Orphans' Court erred in rejecting his argument that Decedent's change of beneficiary on his life insurance policy was not the product of undue influence.

[3] As further discussed *infra*, the Clarks averred that Monica Clark also met with Attorney Stover in September of 2008; however, upon Attorney Stover's recommendation, Monica Clark was not named as a party in the 2008 lawsuit filed by David Clark against Decedent's Estate, and instead, Monica Clark filed her own lawsuit on July 13, 2010.

[4] Robert Clark was Decedent's father, as well as Monica Clark's husband.

[5] Monica Clark averred she and Decedent were appointed as Co-Executors of Robert Clark's Estate. She further averred that Robert Clark had three life insurance policies: a $1,000,000.00 policy owned by Decedent and two $250,000.00 policies for which Monica Clark was named as the sole beneficiary.

2013, the Orphans' Court granted the motion for summary judgment and dismissed Monica Clark's complaint with prejudice. Monica Clark did not file an appeal from the Orphans' Court's order.

On October 1, 2015, the Clarks instituted the instant case against Appellees via a praecipe for a *writ* of summons. On November 5, 2015, the Clarks filed a civil complaint, which they amended on December 14, 2015, and again on January 15, 2016, in response to Appellees' preliminary objections. The Clarks' second amended complaint presented claims as to both David Clark and Monica Clark regarding legal malpractice negligence, legal malpractice breach of contract, and third-party beneficiary. In support of their claims, the Clarks relevantly averred the following:

> 7. Around September 2008, [Appellant], David Clark, retained [Appellee], Jeffrey Stover, Esquire[,] towards bringing an action alleging that [Decedent] suffered from undue influence during the execution of his will. Huntingdon County Orphans' Court Division, Docket No. 10-1017. David Clark had a verbal agreement for legal services with [Attorney] Stover and initially paid [Attorney] Stover approximately $25,000 (David Clark and Monica Clark each contributed about half of this amount).
>
> 8. [Attorney] Stover advised David Clark that [Appellant], Monica Clark, should not be a [p]laintiff in the underlying [will contest] matter because[,] if the lawsuit [was] unsuccessful, Monica [Clark] would be precluded from bringing a subsequent lawsuit for misrepresentation and conversion.
>
> 9. But for [Attorney] Stover's advice (and failure to protect [Monica Clark's] underlying rights and to provide accurate material or facts upon which [the Clarks'] decisions were made), [the Clarks] would not have agreed to exclude Monica Clark as a [p]laintiff at that time.
>
> 10. [Attorney] Stover also advised David Clark that there was a viable claim against MetLife Insurance regarding [Decedent's] life

- 5 -

insurance policies; however, [Attorney] Stover never pursued this claim-despite promises otherwise.

11. At trial, [Attorney] Stover called Dr. John DeCarle, a board certified psychiatrist[,] to testify regarding the physical impact alcoholism had on [Decedent's] mind.

12. Upon information and belief, DeCarle had no previous experience as an expert witness.

13. Further, DeCarle testified that this was the only evaluation during his career where he did not meet with the subject. The Commonwealth (which was a party to the matter because charitable organizations were named as beneficiaries in [Decedent's] last will and testament) submitted both a motion to preclude the testimony of Decarle and a motion to severely discount the testimony of DeCarle.

14. The Honorable Daniel J. Milliron found DeCarle's [testimony] should be severely discounted because he never personally examined [Decedent].

15. Consequently, on or about November 10, 2009, Judge Milliron held that David Clark did not meet the burden of clear and convincing evidence to find [Decedent] was of weakened intellect.

16. Notwithstanding, [Attorney] Stover advised David Clark to appeal and said that the [Orphans' Court's] decision would be reversed. [Attorney] Stover told [David Clark] that "he would still get something out of (the case)."

17. David Clark relied on [Attorney] Stover's false assurances and appealed [his] case to the Pennsylvania Superior Court. David Clark lost his appeal on or about June 20, 2011.

18 Upon [Attorney] Stover's continued advice and false assurances, David Clark appealed to the Pennsylvania Supreme Court-which declined to hear the case on or about May 16, 2012.

19. [The Clarks] paid [Attorney] Stover a total of approximately $50,000 and gave Monica Clark's diamond ring and diamond wrist watch to [Attorney] Stover to litigate t[he] [will contest] case.

20. [Appellant], Monica Clark[,] then retained [Appellees] towards bringing a second action alleging that [Decedent] converted life insurance benefits and tangible personal and business property of Robert Clark, which lawfully belonged to her. Additionally, Monica Clark alleged [Decedent] made misrepresentations that he would invest Monica Clark's share of Robert Clark's Estate of her behalf.

- 6 -

21. Monica Clark had a verbal agreement for legal services with [Attorney] Stover and initially paid [Attorney] Stover approximately $10,000.

22. Judge Milliron presided over the second action.

23. Knowing Judge Milliron was hostile to [Appellants] and had decided against David Clark in the first action, [Appellants] asked that [Attorney] Stover request Judge Milliron recuse himself. [Attorney] Stover failed to do so.

24. Defendants, [Co-]Executors of the Estate of [Decedent], filed a Motion for Summary Judgment.

25. On or about December 17, 2013, Judge Milliron granted Defendants' Motion for Summary Judgment.

26. Of particular note was Judge Milliron's finding that [Attorney] Stover failed to file Monica Clark's lawsuit within the applicable two (2) year statute of limitations period.

27. As a result of the aforesaid, [Appellees] caused [the Clarks] to suffer great monetary expense and emotional distress.

The Clarks' Second Amended Complaint, filed 1/15/16, at ¶¶ 7-27.

On February 1, 2016, Appellees filed another set of preliminary objections, which the trial court granted, in part, and denied, in part. Specifically, the trial court dismissed Monica Clark's legal malpractice breach of contract and third-party beneficiary claims. On February 27, 2017, Appellees filed an answer with new matter to the Clarks' second amended complaint. Therein, Appellees contended as new matter, *inter alia*, that all claims asserted by the Clarks are barred by the statute of limitations. On March 13, 2017, the Clarks filed a reply to the new matter.

Following discovery, on May 7, 2018, Appellees filed a motion for summary judgment, along with a supporting brief, seeking judgment in their favor as to the remaining claims: David Clark's and Monica Clark's legal

malpractice negligence claims, David Clark's legal malpractice breach of contract claim, and David Clark's third-party beneficiary claim. Therein, Appellees averred the Clarks' claims are barred by the statute of limitations and, even if the claims were timely asserted, the Clarks failed to produce evidence establishing a *prima facie* case such that Appellees are entitled to summary judgment as a matter of law.

On June 15, 2018, the Clarks filed a response in opposition to Appellees' motion for summary judgment, along with a supporting brief. Therein, the Clarks averred that, under the equitable discovery rule, they did not file their action beyond the statute of limitations, and, additionally, the statute of limitations was tolled by Appellees' concealment of the facts forming the basis of the Clarks' claims. Moreover, they asserted they set forth ample evidence establishing a *prima facie* case as to the claims.

On June 27, 2018, Appellees filed a reply brief in continued support of their motion for summary judgment, and on July 5, 2018, the Clarks filed a sur-reply in opposition to Appellees' motion for summary judgment. Following oral argument, by opinion and order entered on August 10, 2018, the trial court granted Appellees' motion for summary judgment and dismissed the remaining claims in the Clarks' complaint with prejudice.

Specifically, as to David Clark, the trial court determined that his action against Appellees was barred by the statute of limitations. **See** Trial Court Opinion, filed 8/10/18, at 5-6. With regard to Monica Clark, the trial court

initially determined that Monica Clark did not set forth a *prima facie* case for her legal malpractice negligence claim against Appellees. **See id.** at 6. That is, the trial court determined the statute of limitations as to Monica Clark's underlying conversion claims against the Decedent expired in February of 2007, and since "the earliest possible date that Monica Clark engaged Attorney Stover was in September 2008[,]"[6] she could not demonstrate that she would have prevailed on her underlying claim absent any breach of duty on behalf of Attorney Stover. **Id.** Additionally, the trial court concluded that, to the extent Monica Clark averred Attorney Stover breached his duty by failing to name her as a party in the lawsuit brought by David Clark against Decedent's Estate, Monica Clark's action against Appellees was barred by the statute of limitations. **Id.**

This timely appeal followed on September 5, 2018, and all Pa.R.A.P. 1925 requirements have been met.

_____

[6] As indicated *supra*, although Monica Clark did not file her own action against Decedent's Estate until July 13, 2010, the Clarks averred Monica Clark was present when David Clark met with Attorney Stover in 2008. It is unnecessary for us to determine precisely whether Monica Clark formally retained Attorney Stover in 2008 or 2010.

On appeal, the Clarks argue the trial court erred in granting summary judgment in favor of Appellees on the basis the Clarks' action was barred by the statute of limitations.[7]

The principles we apply in reviewing a summary judgment order are well-settled.

> [S]ummary judgment is only appropriate in cases where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Pa.R.C.P. 1035.2(1). When considering a motion for summary judgment, the trial court must take all facts of record and reasonable inferences therefrom in a light most favorable to the non-moving party and must resolve all doubts as to the existence of a genuine issue of material fact against the moving party. *Yenchi v. Ameriprise Fin., Inc.*, 639 Pa. 618, 161 A.3d 811, 818 (2017) (citing *Toy v. Metropolitan Life Ins. Co.*, 593 Pa. 20, 928 A.2d 186, 195 (2007)). An appellate court may reverse a grant of summary judgment if there has been an error of law or an abuse of discretion. *Fine* [*v. Checcio*, 582 Pa. 253,] 870 A.2d [850,] 857 n.3 [(2005)]. Because the claim regarding whether there are genuine issues of material fact is a question of law, our standard of review is *de novo* and our scope of review is plenary. *Id.*

---

[7] As indicated *supra*, the trial court concluded all claims remaining in the Clarks' complaint were barred by the statute of limitations. However, on appeal, the Clarks have developed an argument related to their legal malpractice negligence, as well as David Clark's legal malpractice breach of contract claim, only. That is, they have developed no argument as to the dismissal of David Clark's third-party beneficiary claim upon the grant of summary judgment. Further, they have developed no argument as to the dismissal of Monica Clark's legal malpractice breach of contract and thirty-party beneficiary claim upon the grant of Appellees' preliminary objections. While the Clarks provide argument with regard thereto in their reply brief for the first time, a reply brief cannot be a vehicle to argue issues not initially raised and developed in the appellant's original brief. *Commonwealth v. Fahy*, 558 Pa. 313, 737 A.2d 214 (1999). We shall, accordingly, confine our analysis.

*Nicolaou v. Martin*, ___ Pa. ___, 195 A.3d 880, 891-92 (2018). In addition, to the extent this Court must resolve a question of law, we review the trial court's grant of summary judgment in the context of the entire record. *Yenchi*, *supra*.

Further, "[s]ummary judgment may properly be entered in favor of a defendant when the plaintiff's cause of action is barred by the statute of limitations." *Brooks v. Sagovia*, 636 A.2d 1201, 1202 (Pa.Super. 1994) (citation omitted). As this Court has held:

> Once the prescribed statutory period for commencing a cause of action has expired, the complaining party is barred from bringing suit. Lack of knowledge, mistake or misunderstanding does not toll the running of the statute of limitations. The defense of statute of limitations is not a technical defense but substantial and meritorious. Mere delay, extended to the limit prescribed, is itself a conclusive bar. There is a strong policy in Pennsylvania courts favoring the strict application of statutes of limitation. It is the duty of a party asserting a cause of action to use all reasonable diligence to be properly informed of the facts and circumstances upon which a potential right of recovery is based and to institute suit within the prescribed statutory period.

*Booher v. Olczak*, 797 A.2d 342, 345 (Pa.Super. 2002) (internal citations and quotations omitted). "Thus, the statute of limitations begins to run as soon as the right to institute and maintain a suit arises....Once the prescribed statutory period has expired, the party is barred from bringing suit unless it is established that an exception to the general rule applies which acts to toll the running of the statute." *Pocono International Raceway, Inc. v. Pocono Produce, Inc.*, 503 Pa. 80, 468 A.2d 468, 471 (1983) (citations omitted). *See Fine*, *supra* (holding the statute of limitations period begins

running even if the plaintiff lacked knowledge or misunderstood the factual or legal basis of the claim). Whether an action was timely filed within the limitations period is a matter of law for the court to determine. *See id.*

> [A]n action for legal malpractice may be brought in either contract or tort….[I]t is undisputed that the two-year limitations period applies to the negligence claim and the four-year limitations period applies to the breach of contract claim. 42 Pa.C.S.[A.] §§ 5524(3), 5525.

*Wachovia Bank, N.A. v. Ferretti*, 935 A.2d 565, 570–71 (Pa.Super. 2007) (citations omitted).[8]

Initially, we must determine when the statute of limitations in this legal malpractice action began to accrue. "[T]he occurrence rule is used to determine when the statute of limitations begins to run in a legal malpractice action. Under the occurrence rule, the statutory period commences upon the happening of the alleged breach of duty." *Communications Network International, Ltd. v. Mullineaux*, 187 A.3d 951, 960-61 (Pa.Super. 2018) (quotation and bold omitted). That is, the "trigger" for the statute of

---

[8] We note that "[a] claim of legal malpractice [based on negligence] requires that the plaintiff plead the following three elements: employment of the attorney or other basis for a duty; the failure of the attorney to exercise ordinary skill and knowledge; and the attorney's negligence was the proximate cause of damage to the plaintiff." *412 N. Front St. Assocs., LP v. Spector Gadon & Rosen, P.C.*, 151 A.3d 646, 657 (Pa.Super. 2016) (citations omitted). A legal malpractice claim based on breach of contract requires the plaintiff establish: (1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract, and (3) resultant damages. *Core States Bank v. Cutillo*, 723 A.2d 1053, 1058 (Pa.Super. 1999).

limitations in a legal malpractice action is not the realization of actual loss but the occurrence of a breach of duty. **Wachovia Bank, N.A.**, 935 A.2d at 572.

In the case *sub judice*, the Clarks have identified various alleged breaches of duty committed by Attorney Stover during the litigation of David Clark's lawsuit against Decedent's Estate, including: the failure to procure competent expert testimony to address the impropriety in the drafting of the Will and Decedent's lack of capacity, the failure to offer factual testimony/evidence that would have buttressed the claims for lack of capacity and undue influence,[9] and the failure to conduct discovery and an evaluation of the Co-Executors' financial activities to rebut the claim that Leslie A. McDermott did not receive a substantial economic benefit from the Will.[10] **See** The Clarks' Brief at 32, 35. Further, as to Monica Clark, they aver Attorney

---

[9] For instance, the Clarks assert Decedent left messages on the Clarks' telephones from late 2007 to early 2008; however, Attorney Stover did not introduce the messages in the underlying Will contest case. The Clarks' Brief at 16-18. Further, they assert Attorney Stover should have deposed various individuals, including Thomas Miller, Charles Lightner, Pamela Filson, Karen Ponish, Charles Bierbach, and Daniel Varner, who would have provided information rebutting the idea that Decedent was of sound mind when he executed the Will. *Id.* at 18-20.

[10] The Clarks assert Attorney Stover breached his duty by failing to request a detailed accounting of the Estate, which would have revealed Leslie A. McDermott was stealing assets from the Estate. The Clarks' Brief at 21-24. They contend this would have discredited Leslie A. McDermott's testimony in the underlying Will contest that she did not receive a substantial benefit from Decedent's Estate. *Id.*

Stover breached his duty by improperly advancing the theory that Monica Clark should pursue her own conversion lawsuit against Decedent's Estate and, thus, failing to join her as a defendant in the lawsuit brought by David Clark against Decedent's Estate.[11]  *See id.*

While the exact dates of Attorney Stover's alleged breaches have not been identified by the Clarks, it is evident that the alleged breaches of duty occurred in this case no later than November 10, 2009, when Judge Milliron entered his order dismissing David Clark's claims against Decedent's Estate in the underlying will contest.[12]  *See Robbins & Sevento Orthopedic Surgeons, Inc. v. Geisenberger*, 674 A.2d 244 (Pa.Super. 1996) (holding the statute of limitations for legal malpractice for alleged negligence in preparing and filing employee pension plan with Internal Revenue Service ("IRS") accrued no later than the date when the IRS rendered its decision that

---

[11] As indicated *supra*, the trial court provided an alternate reason for granting summary judgment in favor of Appellees and against Monica Clark as to her legal malpractice negligence claim; namely, that she did not establish a *prima facie* case since the statute of limitations on her conversion suit against Decedent's Estate expired, at the latest, in February of 2007, which was prior to her retaining of Attorney Stover in 2008.  However, as discussed *supra*, the Clarks did not properly challenge this portion of the trial court's ruling on appeal.

[12] We acknowledge that David Clark filed an appeal to this Court, as well as a petition for allowance of appeal with our Supreme Court, which was denied on June 8, 2012.  However, in *Wachovia Bank, N.A.*, 935 A.2d at 574, this Court "rejected the plaintiff's argument that the pendency or potential pendency of an appeal in the underlying case would toll the statute of limitations in [a] legal malpractice action."

- 14 -

deductions for the pension plan were disallowed). Thus, absent the applicability of any exceptions, the statute of limitations expired two years later (approximately November 10, 2011) for the Clarks' legal malpractice tort claim and four years later (approximately November 10, 2013) for David Clark's legal malpractice breach of contract claim. However, the Clarks did not institute the instant action until October 1, 2015, when they filed their praecipe for a *writ* of summons. **See** Pa.R.Civ.P. 1007 (indicating an action may be commenced by the filing of a praecipe for a *writ* of summons with the prothonotary). Accordingly, their action is barred by the statute of limitations absent an applicable exception.

The Clarks argue they have set forth a genuine issue of material fact as to the applicability of the equitable discovery rule, which is an exception to the occurrence rule. **See Communications Network International, Ltd.**, **supra**.

> The discovery rule is an exception to the requirement that a complaining party must file suit within the statutory period. The discovery rule provides that where the existence of the injury is not known to the complaining party and such knowledge cannot reasonably be ascertained within the prescribed statutory period, the limitations period does not begin to run until the discovery of the injury is reasonably possible. The statute begins to run in such instances when the injured party possesses sufficient critical facts to put him on notice that a wrong has been committed and that he need investigate to determine whether he is entitled to redress. The party seeking to invoke the discovery rule bears the burden of establishing the inability to know that he or she has been injured by the act of another despite the exercise of reasonable diligence.

*Id.* at 961 (quotation and bold omitted). *See Nicolaou*, *supra*, 195 A.3d at 892 (holding the discovery rule is tied to actual or constructive knowledge of at least some form of harm and of a factual cause linked to another's conduct, without the necessity of notice of the full extent of the injury, the fact of actual negligence, or the precise cause); *Wachovia Bank, N.A.*, 935 A.2d at 572 ("[An exception to the occurrence rule] is the equitable discovery rule which will be applied when the injured person is unable, despite the exercise of due diligence, to know of the injury or its cause. Lack of knowledge, mistake or understanding, will not toll the running of the statute.") (quotation marks and quotation omitted)). Under the standard of reasonable diligence, "a plaintiff is required to establish that he exhibited those qualities of attention, knowledge, intelligence and judgment which society requires of its members for the protection of their own interests and the interests of others." *Nicalaou*, *supra*, 195 A.3d at 893-94. "Accordingly, the statute of limitations in a legal malpractice claim begins to run when the attorney breaches his or her duty, and is tolled only when the client, despite the exercise of due diligence, cannot discover the injury or its cause." *Communications Network International, Ltd.*, 187 A.3d at 961 (quotation and bold omitted).

It is noteworthy that due diligence is measured by an objective—rather than a subjective—test. *Gleason v. Borough of Moosic*, 609 Pa. 353, 15 A.3d 479, 485–86 (2011) (quotation omitted). Because due diligence involves a factual inquiry, it is normally a question for the jury. *Id.* However, where

reasonable minds would not differ on whether a party has exercised due diligence, a court may determine that the discovery rule does not apply as a matter of law.[13] *Id. See Wilson v. El-Daief*, 600 Pa. 161, 964 A.2d 354, 361-62 (2009) (holding the applicability of the discovery rule may be resolved "at the summary judgment stage where reasonable minds could not differ on the subject") (quotation marks and quotations omitted)); *Cochran v. GAF Corp.*, 542 Pa. 210, 216, 666 A.2d 245, 248 (1995) ("[W]e have not hesitated to find as a matter of law that a party has not used reasonable diligence in

---

[13] The Clarks contend the Supreme Court's holding in *Nicolaou, supra*, "clarified" that whether the plaintiff met the discovery rule is "a jury question." The Clark's Brief at 34. Further, as to this issue, in a Post-Submission Communication filed with this Court on June 12, 2019, the Clarks ask us to take note of *Rice v. Diocese of Altoona-Johnstown*, ___ A.2d ___, 2019 WL 2427919 (Pa.Super. filed 6/11/19), which applied *Nicolaou*.

Contrary to the Clarks' suggestion, neither *Nicolaou* nor *Rice* establish a *per se* rule that whether the plaintiff met the discovery rule is always a question for the jury. In *Nicolaou*, which involved allegations of medical malpractice in failing to treat and diagnose the plaintiff's Lyme disease, the Supreme Court reiterated that the determination of whether a plaintiff exercised "reasonable diligence" relevant to the application of the discovery rule is "generally" a question for the jury; nevertheless, the Supreme Court held "courts may resolve the matter at the summary judgment stage where reasonable minds could not differ on the subject." *Nicolaou, supra*, 195 A.3d at 894 (quotation and quotation marks omitted). The Supreme Court then concluded in *Nicolaou* that, since there was a genuine issue of material fact and reasonable minds could differ as to whether the plaintiff exercised reasonable diligence, Pennsylvania's general rule (that the issue should be submitted to the jury) applied in the case. *Id.*

Moreover, in *Rice*, this Court concluded reasonable minds could differ as to whether a plaintiff exercised due diligence in a case involving alleged sexual molestation by a priest, as well as the alleged cover-up by the Diocese, and thus, applying *Nicolaou*, this Court held the issue was for the jury to decide.

ascertaining the cause of an injury thus barring the party from asserting their claim under the discovery rule."). The party asserting the discovery rule bears the burden of proof. *Id.*

Here, viewing the record in the light most favorable to the Clarks, there is no genuine issue of material fact that their legal malpractice claims were reasonably discoverable when Judge Milliron rendered his decision in the underlying Will contest case. At this point, they possessed "sufficient critical facts to put [them] on notice that a wrong [by Attorney Stover]" may have been committed. *Communications Network International, Ltd.*, 187 A.3d at 961 (quotation omitted). Nothing in the record suggests that the Clarks were in any way hindered from immediately assessing Attorney Stover's performance.

As the trial court concluded, David Clark testified during his deposition that he was actually aware of Judge Milliron's decision "within a week of November 10th, 2009." David Clark's Deposition, dated 3/15/18, at 128. The Clarks' lack of understanding, lack of knowledge, or mistake about the meaning of Judge Milliron's decision (or Attorney Stover's action/inaction) does not toll the running of the statute. *See Wachovia Bank*, *N.A.*, 935 A.2d at 572. Further, inasmuch as reasonable minds would not differ on whether the Clarks exercised due diligence, and there is no basis for a jury to conclude that the limitations period was tolled by operation of the discovery rule, it was unnecessary for the issue to be submitted to a jury, and the trial

court properly found the discovery rule does not apply as a matter of law.[14]
***Gleason***, ***supra***.

This does not end our inquiry as the Clarks further argue they have set forth a genuine issue of material fact as to whether the statute of limitations should be tolled due to Appellees' fraudulent concealment of facts from them.

The statute of limitations may also be tolled if a defendant fraudulently conceals facts from the plaintiff. ***See Fine***, ***supra***. As our Supreme Court has held:

---

[14] As indicated *supra*, one of the breaches of duty complained of by the Clarks is that, during discovery in the underlying Will contest case, Attorney Stover failed to request a detailed accounting of the Estate, which would have allegedly revealed Leslie A. McDermott was stealing assets from the Estate, which in turn would have discredited Leslie A. McDermott's testimony in the underlying Will contest case. The Clarks' Brief at 21-24, 35-36. The Clarks contend they discovered Leslie A. McDermott was stealing from the Estate during various periods, including from July 2008 to November 2009, when the R.A.C.E. Fund filed a lawsuit against Leslie A. McDermott on March 10, 2015. ***See id.*** at 22; The Clarks' Answer in Opposition to Summary Judgment, filed 6/15/18. Accordingly, under the equitable discovery rule, the Clarks suggest the statute of limitations was tolled until March 10, 2015, when the R.A.C.E. Fund filed its lawsuit.

We disagree with the Clarks' argument. Reasonable minds would not differ in concluding that the Clarks could have reasonably ascertained, with due diligence, whether Attorney Stover requested an accounting of the Estate during discovery in the underlying Will contest case. Specifically, as of November 10, 2009, when discovery was closed and Judge Milliron issued his decision in the underlying Will contest case, the Clarks were put on notice that they should investigate to determine whether Attorney Stover breached his duty in this regard. ***See Gleason***, ***supra***. The Clarks' lack of knowledge or understanding of the need for a detailed accounting does not toll the running of the statute of limitations. ***See Wachovia Bank, N.A.***, ***supra***.

The doctrine [of fraudulent concealment] is based on a theory of estoppel, and provides that the defendant may not invoke the statute of limitations, if through fraud or concealment, he causes the plaintiff to relax his vigilance or deviate from his right of inquiry into the facts. The doctrine does not require fraud in the strictest sense encompassing an intent to deceive, but rather, fraud in the broadest sense, which includes an unintentional deception. The plaintiff has the burden of proving fraudulent concealment by clear, precise, and convincing evidence.

\*\*\*

[T]he standard of reasonable diligence, which is applied to the running of the statute of limitations when tolled under the discovery rule, also…applies when tolling takes place under the doctrine of fraudulent concealment. This is, we believe, the standard that will serve one of the overarching tenets in this area of our jurisprudence—the responsibility of a party who seeks to assert a cause of action against another to be reasonably diligent in informing himself of the facts upon which his recovery may be based. Moreover, because the doctrine captures even unintentional conduct on a defendant's part and the standard of reasonable diligence requires from a party only that knowledge which is reasonably attained under the circumstances, we do not believe that deviation from that standard to a higher threshold of knowledge is warranted. Thus, we conclude that a statute of limitations that is tolled by virtue of fraudulent concealment begins to run when the injured party knows or reasonably should know of his injury and its cause.

*Fine*, *supra*, 870 A.2d at 860-61 (citations omitted).

Here, the Clarks suggest that Attorney Stover fraudulently concealed from them the fact he did not request a detailed accounting of Decedent's Estate in the underlying Will contest. In this vein, they point to the following letter, which Attorney Stover sent to them on May 4, 2015, which was well after the expiration of the statute of limitations, advising them of the following:

> I understand from a very good source that a Civil Action has been or is about to be filed against Leslie McDermott and Edson Craft (and maybe Larry Newton) on account of Ms. McDermott co-mingling and stealing the Estate assets for her own benefit. Apparently there is very little in the way of assets remaining in the Estate.

The Clarks' Brief at 35.

The Clarks aver that upon receipt of this letter, in which Attorney Stover was apparently referring to the R.A.C.E. Fund's lawsuit, the Clarks "finally knew that there was a major piece of their case that was not included by [Attorney] Stover." *Id.* They argue Attorney Stover's letter amounts to an admission of negligence, as well as fraudulent concealment, as to his failure to request a detailed accounting of the Estate.

Initially, we note the facts underlying the Clarks' claim are not in dispute, *i.e.*, the Clarks rely on the letter from Attorney Stover for the basis of their fraudulent concealment claim. We hold the content of the letter, as a matter of law, does not establish fraudulent concealment. *See id.* That is, the letter provides no evidence of an unintentional or intentional act of concealment or that Attorney Stover somehow, through fraud or concealment, caused the Clarks to relax their vigilance to inquire about the breaches allegedly committed by him during the underlying litigation. *See id.*

Finally, the Clarks suggest that, through fraud or concealment, Attorney Stover made David Clark relax his vigilance as to Attorney Stover's negligence in the underlying Will contest case by assuring David Clark that he believed

Judge Milliron's decision in the underlying Will contest case was incorrect, and thus, David Clark could win on appeal. *See* The Clarks' Brief at 41.

During his deposition, David Clark admitted that, prior to appealing, he believed "[Attorney Stover] missed a bunch of the mistakes the judge made. And then the judge missed half the mistakes that [Attorney Stover] had made." David Clark's Deposition, dated 3/15/18, at 56.[15] In any event, viewing the evidence in the light most favorable to the Clarks, nothing in the record suggests the Clarks were in any way hindered from immediately assessing Attorney Stover's performance. *Fine*, *supra*.

In conclusion, we conclude there is no genuine issue of material fact, and there is no error of law in the trial court's determination that the Clarks' legal malpractice claims are barred by the statute of limitations.

For all of the foregoing reasons, we affirm.

Affirmed; Application to Strike is Denied; Application for Substitution of a Party is Granted.

---

[15] We note the Clarks request that this Court adopt the "Continuous Representation Rule" under which the statute of limitations would not begin to run until the date on which the Clarks terminated Attorney Stover. This Court has previously rejected this argument, **Glenbrook Leasing Co. v. Beausang**, 839 A.2d 437 (Pa.Super. 2003), and we are bound by the holding under the doctrine of *stare decisis*. **Eckman v. Erie Ins. Exchange**, 21 A.3d 1203, 1209 (Pa.Super. 2011) ("This Court is bound by existing precedent under the doctrine of *stare decisis*.").

- 22 -

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>8/1/2019</u>