J-S33001-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| MYRNA COHEN | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MOORE BECKER, P.C., | : | No. 208 WDA 2023 |

Appeal from the Order Entered January 31, 2023
In the Court of Common Pleas of Westmoreland County Civil Division at
No(s): 8424of 2008

BEFORE: BENDER, P.J.E., McCAFFERY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY BENDER, P.J.E.: **FILED: December 22, 2023**

Appellant, Myrna Cohen, appeals from the trial court's January 31, 2023 order, entering summary judgment in favor of Appellee, Moore Becker, P.C. ("Law Firm"). After review, we affirm.

## I.

This appeal involves a legal malpractice claim against Law Firm based on a theory of *respondeat superior* liability.[1] As this case has a rather lengthy history, we focus on the aspects that are most pertinent to the issues on appeal before us. In relevant part, on July 30, 2008, Appellant filed a praecipe for writ of summons against Law Firm and Attorney Jeffrey Abramowitz,

_____

[*] Former Justice specially assigned to the Superior Court.

[1] "Under the doctrine of *respondeat superior*[,] recovery is sought on the basis of vicarious liability. An employer is vicariously liable for the wrongful acts of an employee if that act was committed during the course of and within the scope of employment." ***Brezenski v. World Truck Transfer, Inc.***, 755 A.2d 36, 39 (Pa. Super. 2000) (citation omitted).

followed by a complaint on September 4, 2009. On July 8, 2010, Appellant filed an amended complaint.[2] Therein, *inter alia*, Appellant made the following allegations.

*Long-Term Disability Benefits – Federal Action*

Appellant alleged that, in 2002, she was receiving long-term disability benefits through her previous employer, PNC Bank Corporation ("Employer"). Amended Complaint, 7/8/10, at ¶ 6.[3] She stated that the long-term disability plan was administered by UNUM Provident ("UNUM"). **Id.** In 2002, Appellant averred that she was informed that these long-term disability benefits were being terminated by UNUM on behalf of Employer. **Id.** at ¶ 7. According to Appellant, immediately thereafter, Attorney Abramowitz — who worked for a different law firm at the time — orally agreed to represent Appellant in an appeal from Employer/UNUM's decision to terminate her long-term disability benefits. **Id.** at ¶ 8. Appellant stated that the appeal was subsequently denied. **Id.** at ¶ 9.

Appellant explained that Attorney Abramowitz — who had since become an attorney at Law Firm — subsequently filed an action in federal court against Employer and its affiliates to seek a reversal of the decision terminating

---

[2] Since that time, Appellant's claims against Attorney Abramowitz have been discontinued, and the trial court dismissed Appellant's direct professional negligence claim against Law Firm. The only claim remaining is the legal malpractice claim against Law Firm based on a theory of *respondeat superior* liability.

[3] Long-term disability is sometimes referred to as "LTD" throughout this writing.

Appellant's long-term disability benefits. *Id.* at ¶ 10. Thereafter, following the close of the pleadings in the case, Appellant said that the federal court directed that all motions for summary judgment and supporting documents be filed by June 11, 2004, with responses due July 27, 2004. *Id.* at ¶ 11.

Appellant claimed that Employer and its affiliates filed a motion for summary judgment, but Attorney Abramowitz did not file a timely response. *Id.* at ¶¶ 12-13. As stated by Appellant, on November 2, 2004, the federal court, *sua sponte*, entered an order giving Attorney Abramowitz until November 15, 2004 to respond to the motion for summary judgment, but he still did not file a response. *Id.* at ¶¶ 14-15. Consequently, Appellant said, the federal magistrate judge filed a report and recommendation on January 20, 2005, granting summary judgment in favor of Employer and its affiliates, and giving Appellant ten days to file objections to the report and recommendation. *Id.* at ¶ 16. Appellant claimed that Attorney Abramowitz did not file exceptions and/or objections to the report and recommendation. *Id.* at ¶ 17.

Later, on February 8, 2005, Appellant alleged that a memorandum order granting the motion for summary judgment was entered by a federal district court judge, and neither Attorney Abramowitz, nor Law Firm, informed her of it. *Id.* at ¶¶ 18-19. Appellant stated that she was not aware that the federal claim had been dismissed until July of 2008. *Id.* at ¶ 23. Appellant averred that, due to the lack of response to the motion for summary judgment, the

federal claim was dismissed and she was denied the opportunity to recover long-term disability benefits from the disability plan. *Id.* at ¶ 33.

*Long-Term Disability Benefits – March 27, 2007 Reassessment Letter*

Appellant additionally alleged that, in March of 2007, due to the settlement of a class action lawsuit against UNUM, she was given an opportunity to have her long-term disability claim reviewed pursuant to a formal claim reassessment process. *Id.* at ¶ 20. Appellant asserted that, on March 27, 2007, UNUM mailed to Attorney Abramowitz and Law Firm's office "a reassessment information form … which provided that, in order to have [Appellant's] long-term disability claim reassessed, the form needed to be filled out and returned within sixty (60) days." *Id.* at ¶ 21.[4] According to Appellant, neither Attorney Abramowitz nor Law Firm completed the form, or informed Appellant about its existence. *Id.* at ¶ 22. Consequently, her claim was not placed in the reassessment program. *Id.* Appellant alleged that she did not become aware that her claim could have been reassessed until July of 2008. *Id.* at ¶ 24.

*Social Security Disability Benefits*

Appellant also alleged that, in 1999, she became disabled and, through counsel retained by Employer, she filed a claim for social security disability benefits. *Id.* at ¶ 25.[5] Appellant stated that the claim was heard by an

---

[4] Appellant attached a copy of this form to her amended complaint.

[5] At times in this writing, social security disability is referred to as "SSD."

administrative law judge, who denied her claim for benefits. *Id.* at ¶ 26. Shortly thereafter, Appellant said she and Attorney Abramowitz entered into an oral agreement whereby Attorney Abramowitz agreed to represent her in an appeal of the denial of the SSD benefits. *Id.* At ¶ 27. Subsequently, Appellant explained that, when she would inquire about the benefits, Attorney Abramowitz "continually assured [her] that the proper paperwork had been filed, that a decision was forthcoming[,] and that her rights for SSD benefits were protected." *Id.* at ¶ 28. However, Appellant claimed that, contrary to his representations, Attorney Abramowitz never filed an appeal from the denial of benefits with the appeals council. *Id.* at ¶ 29. Appellant averred that she did not learn that Attorney Abramowitz failed to file the appeal until August of 2006. *Id.* at ¶ 30. Appellant explained that, because no appeal was filed, she was forced to retain new counsel and reapply for social security disability income, which was not awarded until February of 2008. *Id.* at ¶ 34. As a result, she alleged that she received social security disability income that was significantly less than that which she would have received had the appeal been filed in 2000. *Id.* at ¶ 35.

*Law Firm's Motion for Summary Judgment*

Nearly 14 years after Appellant filed the praecipe for writ of summons and following multiple appeals to this Court, Law Firm filed a motion for summary judgment, a brief in support, and an appendix of exhibits on July

11, 2022.[6, 7]  In Law Firm's brief in support, it proffered the following relevant

facts in support of its motion:

### A. Long[-]Term Disability Benefits

On March 2, 1998, [Appellant] began her employment with PNC
("Employer") as a financial service consultant.  (SSA Work History
Report Excerpts, Exh. 1).  [Appellant's] job involved working with
computers and account information.  (*Id.*)  Per [Appellant], she
developed abdominal pain, vomiting, diarrhea, and other
symptoms which began to bother her in June 1998.  (*Id.* Sec. 2).
Due to these symptoms, she went home from work on July 27,
1998[,] and never returned.  (*Id.*)

One of the earlier medical records available from this general time
period, from an emergency room visit on September 18, 1998,
indicates a history of irritable bowel syndrome.  (ER 9/18/98, Exh.
2).  The emergency doctor's note also indicates: "Quite frankly the

---

[6] One of the appeals to this Court stemmed from the trial court's dismissal of
Appellant's amended complaint with prejudice, as a result of Appellant's
repeated failure to attend a deposition.  On appeal, this Court vacated the trial
court's dismissal order and remanded the case for the trial court to impose a
more appropriate sanction, stating that "although Appellant's repeated and
untimely defiance of [Law Firm's] deposition notices and the court's discovery
orders exhibited bad faith, consideration of all relevant factors compels us to
conclude that dismissal is disproportionate to Appellant's discovery
transgressions."  *Cohen v. Moore Becker, P.C.*, 2020 WL 6268581, at *7
(Pa. Super. filed Oct. 26, 2020) (citations omitted).  On remand, in imposing
a less severe sanction, the trial court ordered that Appellant is precluded from
providing any testimony in the case, and is subject to a monetary sanction of
$8,005.00.  *See* Order, 4/22/21.

[7] In Law Firm's brief in support of its motion for summary judgment, it
explained that it considered discovery relevant to the motion for summary
judgment to be closed.  *See* Law Firm's Brief in Support of Motion for
Summary Judgment, 7/11/22, at 7 ("Law Firm considers discovery to be
closed.  [Appellant] has not, through any of her three lawyers to date, initiated
any depositions.  Nor has [Appellant] taken any affirmative steps in many
years to prepare her case for trial.  At some point, the case must become ripe
for disposition via summary judgment, even if [Appellant] has shown no
interest in advancing her own case.").  Appellant does not dispute this, or
specifically ask for more discovery to occur.

patient has a rather neurotic presentation." (***Id.*** pg. 2). The doctor advised that a definitive diagnosis must be sought at [the University of Pittsburgh Medical Center] so as to ensure continuity of care. (***Id.***…).

[Appellant's] Employer provided a Long-Term Disability Plan ("LTD Plan") to employees who were out of work for periods longer than 90 days (LTD Plan, Exh. 3).[2] Under the LTD Plan, for the first two years of disability, the employee was considered "Totally Disabled" if she could not perform the material duties of her regular position. (LTD Plan pg. 5, Exh. 3). After a 2-year period, to continue LTD benefits, an employee was required to show that she could not perform the material duties of ***any*** gainful occupation for which she was reasonably fitted by training, education, or experience. (LTD Plan pg. 5, Exh. 3).

> [2] … Employer was the designed [*sic*] LTD Plan Administrator. (LTD Plan pg. 15, Exh. 3). Technically, the employer, PNC, and UNUM…, entered into an Administrator Agreement, by which UNUM may have made some of the decisions affecting [Appellant]. As this distinction is not material to this [m]otion, … Law Firm refers simply to both collectively as … "Employer," for ease of reading.

In November 1998, [Appellant] applied for and began to receive LTD benefits based on her condition of diarrhea and related symptoms. (Application for Benefits, Exh. 4). In contrast to [Appellant's] subjective complaints, Dr. [Rosanne] Granieri's progress note from November 18, 1998[,] revealed a "normal upper GI endoscopy, a normal colonoscopy, and an abdominal ultrasound that was normal." (Dr. Granieri 11/18/98, Exh. 5).

… Employer continually evaluated [Appellant's] continuing eligibility for LTD benefits. In June 1999, Dr. Granieri's notes indicate that [Appellant] began to treat with alternative medicine. Dr. Granieri warned [Appellant] that while she had no objection to a specific diet: "It is not standard and generally not accepted as medicine based on evidence." (Dr. Granieri 6/28/99, Exh. 6). Also of note, between November 1998 and July 1999, [Appellant] was not seen by Dr. Granieri at all. (Dr. Granieri 7/20/99 Progress Nt, Exh. 7). Rather, her chart reflected telephone calls. (***Id.***) And, the Progress Note from July 1999, alluded to the alternative medicine of which Dr. Granieri had warned. Notably absent from the Progress Note was a specific diagnosis. The doctor noted her

assessment of chronic diarrhea ("irritable bowel by diagnosis of exclusion"), as well as [an] elevated IGM level. (***Id.***)[8]

… Employer temporarily suspended [Appellant's] LTD benefits on July 9, 1999, due to the fact that there had been no proof of ongoing disability o[r] proof that she was still under the care of a physician. (UNUM Let. 7/9/99, Exh. 8). … Employer provided [Appellant] with an opportunity to produce additional medical documentation. (***Id.***; UNUM Letr. 8/2/99, Exh. 9)[.]

Apparently unsatisfied w[ith] [Appellant's] production, … Employer then sent [Appellant] for a medical examination. On October 4, 1999, Dr. Lee Hershenson, a[] gastroenterologist, examined [Appellant] and found, in pertinent part:

- The functional impairments … can be assessed only on the basis of the patient's subjecting [*sic*] reporting because of the nature of those symptoms, and because physical examination reveals no objective findings other than hypotension.

- The symptoms described by the patient seem not to have an impact on her ability to care for herself but certainly impact her eating pattern and need for toilet facilities.

- Current treatment in this case appears to be minimal, except for "complimentary" or "alternative" medications.

(Hershenson IME, Exh. 10). When Dr. Granieri, [Appellant's] own doctor, was asked to comment, she said that [Appellant's] symptoms of fatigue, abdominal pain[,] and intermittent diarrhea made it difficult to work, but did not opine that [Appellant] could not work at all. (Dr. Granieri's Ltr. 11/24/99, Exh. 11). Dr. Granieri explained:

She tells me that her fatigue and [h]er periods of diarrhea, which leads to good days and bad days, make it difficult to be employed. I cannot comment on her ability to gain specific employment, based on her education, training or experience. I can only provide to you this small piece of medical information. (***Id.***)

---

[8] The exhibit does not state what "IGM" means.

… Employer continued [Appellant's] LTD benefits for the time being.

In August 2000, a gastroenterologist, Dr. George Arnold, indicated that a further study "showed no abnormalities." (G. Arnold 8/25/00 Ltr. & 10/7/00, Exh. 12). In September 2000, [Appellant's] new family doctor, Dr. Laura Arnold, indicated that [Appellant] reported abdominal pain, but was physically able to work part[-]time, and if that went well, could return full[-]time. (Dr. L. Arnold 9/2/00, Exh. 13). By November 2000, additional records revealed normal results for esophageal and gastric studies of [Appellant]. (G. Arnold 11/28/00 Ltr., Exh. 14).

In November 2001, [Appellant] began to see another family doctor, Dr. [Amy] Stine. Dr. Stine diagnosed generalized abdominal pain, [and] indicated [Appellant] was gradually improving and could start part-time work in 6 months. (Stine Ltr., 2/28/[0]2 & Status Report 3/6/[0]2, Exh. 15). [Appellant's] chart with Dr. Stine revealed generalized abdominal pain, fatigue, and asthma. (*Id.*)

In March 2002, Employer's clinical consultant and registered nurse reviewed the entire claim file and noted the following:

- Abdominal pain was either a 0 or 1, had significantly improved, and was intermittent;

- [Appellant] reported cooking, washing dishes, and doing laundry;

- Dr. Stine's opinion revealed symptoms, but no specific limitations[.]

(RN Dotson, Exh. 16). Employer's nurse consultant concluded that the medical documentation did not support an impairment that would prevent [Appellant] from working at any occupation for which she was qualified. (*Id.*) The nurse's review was followed by a physician review by Dr. Susy Vergot in April 2002. (Vergot, Exh. 17). Dr. Vergot concluded that there was no functional inability that would preclude [Appellant] from gainful employment (*Id.*)

In this same period of time, [Appellant] reported on her activities to … Employer. (Markee Nt., Exh. 18). Per those notations, [Appellant] had been meeting with business owners, asking them if she could do work for them at home. [Appellant] passed out

literature for an insurance company and stated an intent to buy an "Arena Football Team." (*Id.*) … Employer's file notes that [Appellant] reportedly did not like working. (*Id.*)[9]

In June 2002, … Employer obtained an Employability Assessment. (Assessment 6/6/02, Exh. 19). Therein, the Consultant concluded that [Appellant] had viable employment options, listing four examples based on her education, employment and training[,] and the labor market where [Appellant] resided. (*Id.*)

In approximately August 2002, [Attorney] Abramowitz first came to represent [Appellant] [with] respect to her LTD benefit claim. (Abramowitz Letr. 8/19/02, Exh. 20). [Attorney] Abramowitz provided … Employer with a new report from Dr. Stine in August 2002 (Stine 8/2002 Ltr. Exh. 21), followed by another letter, dated March 2, 2003, that is so exceedingly brief that it may be quoted below in its entirety:

> *Enclosed are my office notes on [Appellant] for the time period that you requested.*
>
> *I wanted to summarize [Appellant's] condition and treatment. She has chronic diarrhea, chronic abdominal pain, chronic nausea and vomiting, and chronic fatigue. The medication that she takes helps slightly but in no way stops her symptoms; thus it is next to impossible for her to work on a regular basis.*
>
> *If you have any questions or concerns, please contact me at the above address. Thank you for your time and attention.*
>
> *Sincerely,*
>
> *Amy R. Stine, M.D.*

(Stine 3/3/03, Exh. 22).

In response to Dr. Stine's letter, in March of 2003, … Employer performed another Clinical Review. (Review 3/7/03, Exh. 23). Therein, the Reviewer concluded:

> Most of the complaints continue to be subjective in nature and of self-report. There does not appear to be an

---

[9] Our review of this exhibit shows that it says Appellant "does not like not working." Law Firm's Appendix of Exhibits, 7/11/22, at Exhibit 18.

- 10 -

impairment present at this time. Restrictions and limitations would not be supported…. It would appear that the claimant would be able to return to work at this time. There is no support for her diagnosis of chronic abdominal pain and chronic vomiting, unless it might be of a psychological nature, but no referral to a Psychiatrist or Psychologist is currently in the medical file. (***Id.*** pg. 2)[.]

On April 22, 2003, … Employer denied [Appellant's] claim for continuing LTD benefits. (Denial 4/22/03, Exh. 24).

[Appellant], acting both on her own, and also through Attorney Abramowitz, appealed. (Abramowitz Letr. Appeal 4/29/03 & [Appellant] Letr. Appeal 4/29/03, Exh. 25). [Appellant] argued that … Employer failed to consider her symptoms and diagnosis as a whole. (***Id.***) Upon receipt of the appeal, … Employer asked Dr. [Joseph] Sentef[, Jr.,] to review the file once more. Dr. Sentef responded, in pertinent part, as follows:

- "In my previous review, I addressed her gastrointestinal symptoms. She had an upper endoscopy and a lower colonoscopy, which both appeared to be within normal limits. There is no explanation for her nausea, vomiting[,] and diarrhea."

- "As noted previously, most of the complaints appear to be subjective in nature and of self report. The claimant has had complete work-ups without any medical findings."

- "There does not appear to be support for impairment. No restrictions and limitations would be supported."

- "As noted above, there is no impairment present." (Dr. Sentef Letr. 5/25/03 and prior letter 10/6/02, Exh. 26).

The Employer denied [Appellant's] appeal on June 3, 2003. (6/3/03 Denial of Appeal, Exh. 27).

In 2003, [Appellant] filed suit against her Employer in the United States District Court for the Western District of Pennsylvania at Docket No. 03-0980. Therein, she alleged wrongful denial of her continuing LTD benefits. Attorney Abramowitz represented [Appellant] in that action. In June 2004, the Employer filed a Motion for Summary Judgment. (MSJ & Brief, Exh. 28).

[Appellant]/[Attorney] Abramowitz did not respond. (Amd. Cmplt. ¶[¶ ]14-15). Accordingly, the Magistrate filed a Report and Recommendation on January 20, 2005, analyzing the facts of record and ultimately, granting summary judgment. (R&R 1/20/05, Exh. 29). [Appellant]/[Attorney] Abramowitz did not file objections. (Amd. Cmplt. ¶[¶ ]16-17). Accordingly, on February 8, 2005, the [c]ourt entered summary judgment. (See Docket Entry 2/8/05, Exh. 30).

In December 2005, … Employer sent [Appellant] a form letter required as part of a multistate settlement with insurance regulators. (UNUM Letr 12/2/05, Exh. 31). Therein, … Employer described a reassessment process. [Appellant] elected to participate. (Abramowitz Letr. 1/30/06, Exh. 32). … Employer sent [Appellant] c/o [Attorney] Abramowitz, what appears to be a form letter, acknowledging [Appellant's] participation and advising that the process could take up to 24 months or more. (UNUM Letr. 5/1/06, Exh. 33). [Appellant] claims that [Attorney] Abramowitz/Law Firm failed to further pursue reassessment. However, the claim reassessment process did not apply to judgments that had already been entered. (UNUM Letr., 12/2/05[,] pg. 2, Exh. 31). The reassessment did not guarantee a different outcome either.

## B. Social Security Benefits

While [Appellant] was receiving LTD benefits, [Appellant] undertook an effort to acquire Social Security benefits on a parallel track. [Appellant] first applied for Social Security benefits in March 1999. (Amd. Cmplt. ¶[]25). The [Social Security Administration ("SSA")] denied [her] initial claim for benefits on June 2, 1999. (Amd. Cmplt. ¶[]26) (Denial 6/2/99, Exh. 34). [Appellant] then retained Attorney Laura Cella-Donovan (who was not affiliated with … Law Firm) to further pursue the benefits. (Fee Agreement, Exh. 35). Reconsideration was denied by the SSA based on a determination that [Appellant's] digestive condition was not severe enough to keep her from working. (SSA Denial 11/1/99, Exh. 36).

Attorney Cella-Donovan appealed the denial of benefits and represented [Appellant] in a hearing on May 21, 2000. (SSA Decision, 5/22/00, Exh. 37). The Administrative Law Judge (["]ALJ["]) concluded that [Appellant] was not disabled within the meaning of the Social Security Act. (*Id.* pg. 2 & 7). The ALJ further concluded that [Appellant] retained the residual functional

capacity to perform her past relevant work as a financial services consultant. (*Id.* pg. 6). The ALJ further found that [Appellant's] allegations of totally disabling limitations and pain[] were "not fully credible and are not consistent with the clinical and objective findings, her overall testimony, and the other evidence of record." (*Id.* at pg. 6).

[Appellant] appealed. (Request for Review 5/31/00, Exh. 38). The Appeals Council denied [Appellant's] appeal. (Appeals Council Denial 1/24/02, Exh. 39). Attorney Cella-Donovan reported this information in a letter on January 31, 2002. (Donovan Letr 1/31/02, Exh. 40). Ms. Cella-Donovan outlined the options in that letter.

> 1. Proceed with this case by commencing a law suit [*sic*] against the [SSA] in Federal District Court within 60 days of the date of this Appeals Council['s] denial;
>
> 2. File a new application for Social Security; or
>
> 3. Drop the case and accept this decision. (Donovan Letr, 1/31/02, Exh. 40).

The Law Firm was not involved in these proceedings.

Three years later, beginning in the Spring of 2005, [Appellant] filed more applications for disability benefits with the [SSA] alleging adjustment disorder, with a secondary diagnosis of irritable bowel syndrome. By two separate Determination Letters, both dated July 6, 2005, the SSA denied the claims. (Disability Det. Letrs. 7/6/05, Exh. 41). In analyzing the vocational factors, the disability examiner found [Appellant's] restrictions did not limit her ability to do past relevant work. (*Id.*)

In early 2006, [Appellant] asked [Attorney] Abramowitz to continue to pursue her social security disability claim. (Abramowitz Letr 11/9/07, Exh. 42). However, due to health issues, [Attorney] Abramowitz left … Law Firm in 2006 and thereafter[] ceased practicing law. (Abramowitz Answ. ¶ 2) (Law Firm Answ. ¶ 2). By July 2006, [Appellant] had retained another lawyer, Attorney Shelly Farber. ([Appellant] Letter 7/19/06, Exh. 43). On July 19, 2006, [Appellant] asked … Law Firm to transfer its files to [Attorney] Farber. (*Id.*) That same day, [Attorney] Farber faxed a Request for Review to the [SSA]. (7/19/06, Exh. 44). … Law Firm provided its file materials to successor counsel on July 25, 2006. (7/25/06, Exh. 45).

The SSA reopened a prior denial and conducted a hearing in January 2008, at which Attorney Barbara Artuso represented [Appellant]. The new [ALJ] concluded that [Appellant] was disabled from March 28, 2006 through the date of the decision. (Decision 2/12/08, Exh. 46). Unsatisfied, [Appellant] expressed to Attorney Artuso that she should have been found disabled dating back to 2004. ([Appellant's] Note 4/9/08, Exh. 47).

[Appellant] then filed an action against the [SSA] in the Eastern District of Pennsylvania, at Docket 09-CV-03614[,] seeking a review of the decision granting her benefits. Therein, [Appellant] accused her lawyer, [Attorney] Artuso, of having a conflict of interest and accused the [ALJ] of bias. [Appellant's] accusations were rejected by the District Court as having no merit, as well as all of her other objections. (Memo[] 2/28/11, Exh. 48).

**C. Additional Facts Pertinent to the Statute of Limitations**

When Attorney Farber began representing [Appellant] in the summer of 2006, she was already unhappy with [Attorney] Abramowitz's prior representation. [Attorney] Farber wrote a detailed letter to [Appellant] and specifically advised her that she had until July 1, 200[8,] to file a lawsuit against [Attorney] Abramowitz:

> … [A]s you discovered in July 2006 that he had not properly filed the appeal (if your discovery did not occur until July 2006)[,] **you have until July first 2008 to file a lawsuit** against [Attorney Abramowitz] and all his law firms that he was with while representing you for social security benefits OR YOUR RIGHTS WILL BE FOREVER BARRED.[]

(Farber Letr, 11/7/07 pg. 2, Exh. 49) (emphasis added; capitalization in original). [Appellant] filed this lawsuit on July 30, 2008.

Law Firm's Brief in Support of Motion for Summary Judgment at 7-16 (emphasis in original; most footnotes omitted).

Based on the foregoing, Law Firm argued that summary judgment should be entered in its favor for three reasons. First, it stated that Appellant's action is barred by the statute of limitations, as the limitations period for a

legal malpractice claim is two years and Appellant filed the praecipe for writ of summons too late. It stated that, "[t]o the extent [Appellant] was displeased with [Attorney] Abramowitz's representation and believed she had a viable malpractice claim, successor counsel specifically advised [Appellant] to file her action by July 1, 2008, at the latest." Law Firm's Motion for Summary Judgment, 7/11/22, at ¶ 20; *see also* Law Firm's Brief in Support of Motion for Summary Judgment at 19 ("It may be reasonably inferred that [Appellant] was unhappy with [Attorney] Abramowitz when she terminated him in July 2006. If she was not already cognizant of a claim by June 2006, certainly by July 2006, when her new lawyer stepped in and acquired the file materials, she had the means to discover any alleged error."). Law Firm said that the action was not initiated until July 30, 2008. Law Firm's Motion for Summary Judgment at ¶ 22. Second, in addition to the statute of limitations argument and with respect to Appellant's claim that Attorney Abramowitz did not respond to the Employer's motion for summary judgment in the federal case for long-term disability benefits, Law Firm contended that Appellant "cannot merely argue that Law Firm should have responded, but must establish that she would have ultimately prevailed based on the evidence that was available at the time." *Id.* at ¶ 37. Law Firm argued that Appellant could not have defeated Employer's motion for summary judgment given the overwhelming amount of evidence against Appellant. *See id.* at ¶¶ 27, 36. Third, in addition to the statute of limitations argument and regarding the social security disability benefits, Law Firm claimed that "no harm resulted

from any action or inaction of … Law Firm, as [Appellant] received the [s]ocial [s]ecurity benefit decision that she was seeking, albeit through successor counsel, and for the only period of time where she was actually able to establish evidence of a disabling and qualifying condition." *Id.* at ¶ 46.

On September 16, 2022, Appellant filed a brief in opposition to Law Firm's motion for summary judgment. In contrast to Law Firm's summary judgment filings, which contained dozens of exhibits to support it, Appellant only attached the amended complaint as an exhibit to her brief in opposition. In her brief, Appellant first argued that her action was not barred by the statute of limitations. Among other things, she contended that Law Firm "skipped over the fact that [Appellant's] Amended Complaint also pursues negligence in regard to [Attorney] Abramowitz's failure to complete the reassessment form, which wasn't even issued until March of 2007." Appellant's Brief in Opposition to Motion for Summary Judgment, 9/16/22, at 6 (unpaginated). Second, with respect to Law Firm's claim that Appellant has not shown that she would have prevailed in the federal action for long-term disability benefits, she insisted — without citing any supporting evidence — that "[h]ad [Attorney] Abramowitz developed the case and retained a medical expert, the [m]otion for [s]ummary [j]udgment could have been successfully defended against." *Id.* at 7 (unpaginated). Finally, as for Law Firm's argument that Appellant suffered no harm from Attorney Abramowitz's handling of her social security disability claim, she said that the favorable social security benefits decision was not reached until February 2008, and that

she "suffered damages in that she had to go for approximately two (2) years without the benefits to which she was entitled." *Id.* Without any elaboration, she stated that "[t]his delay is specifically attributed to [Attorney] Abramowitz and [Law Firm]." *Id.*

On January 31, 2023, the trial court entered an order granting Law Firm's summary judgment motion. It credited all three of Law Firm's arguments for why summary judgment was appropriate. Appellant timely appealed and timely complied with the trial court's order to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Thereafter, the trial court issued an opinion pursuant to Rule 1925(a).

## II.

Presently, Appellant raises the following issues for our review:

[1]. Whether the [t]rial [c]ourt improperly used Attorney Abramowitz's negligence (completely failing to develop [Appellant's] case by failing to obtain a medical expert to contradict the State's independent medical evaluation) as a reward for [Law Firm] by finding that [Appellant] could not have recovered on her claim because of the uncontradicted medical records.

[2]. Whether the [t]rial [c]ourt improperly found that [Appellant] had no damages because she eventually, approximately 2 years later, obtained benefits back[-]dated to March 2006.

[3]. Whether a genuine issue of material fact exists as to the date that [Appellant] discovered the negligence committed by Attorney Abramowitz regarding his failure to submit paperwork for a formal claim reassessment process with respect to [Appellant's] long-term disability claim.

[4]. Whether a genuine issue of material fact exists as to the date that [Appellant] discovered the negligence committed by Attorney

- 17 -

Abramowitz regarding his failure to respond to a Motion for Summary Judgment in [Appellant's] long-term disability claim.

[5]. Whether a genuine issue of material fact exists as to the date that [Appellant] discovered the negligence committed by Attorney Abramowitz regarding his failure to develop [Appellant's] case in any way with respect to [Appellant's] long-term disability claim.

[6]. Whether the trial [c]ourt improperly used the date of Attorney Abramowitz's negligent actions instead of using the date on which [Appellant] knew or should have known of Attorney Abramowitz's negligence.

[7]. Whether the trial [c]ourt failed to properly consider the timeliness of [Appellant's] claim that Attorney Abramowitz failed to pursue [Appellant's] appeal of the denial of her social security claim, in light of the fact that [Appellant] pled that Attorney Abramowitz represented to [Appellant] that he had filed the same when in fact he had not, that she didn't discover[] the same until August of 2006, and that [Law Firm] presented no evidence to the contrary.

Appellant's Brief at 4-6.[10, 11]

At the outset of our review, we acknowledge that:

Our review on an appeal from the grant of a motion for summary judgment is well-settled. A reviewing court may disturb the order of the trial court only where it is established that the court

_____

[10] We have re-ordered Appellant's issues for ease of disposition.

[11] We note that Appellant's reproduced record fails to comply with the Rules of Appellate Procedure. Specifically, it contains no table of contents, or any pagination. *See* Pa.R.A.P. 2173 ("[T]he pages of briefs, the reproduced record and any supplemental reproduced record shall be numbered separately in Arabic figures and not in Roman numerals: thus 1, 2, 3, etc., followed in the reproduced record by a small a, thus 1a, 2a, 3a, etc., and followed in any supplemental reproduced record by a small b, thus 1b, 2b, 3b, etc."); Pa.R.A.P. 2174 ("The briefs and the reproduced record shall each contain a full and complete table of contents, set forth either on the inside of the front cover or on the first and immediately succeeding pages."). We admonish Appellant for her lack of compliance.

- 18 -

committed an error of law or abused its discretion. As with all questions of law, our review is plenary.

In evaluating the trial court's decision to enter summary judgment, we focus on the legal standard articulated in the summary judgment rule. Pa.R.C[iv].P. 1035.2. The rule states that where there is no genuine issue of material fact and the moving party is entitled to relief as a matter of law, summary judgment may be entered. Where the non-moving party bears the burden of proof on an issue, he may not merely rely on his pleadings or answers in order to survive summary judgment. Failure of a non-moving party to adduce sufficient evidence on an issue essential to his case and on which it bears the burden of proof … establishes the entitlement of the moving party to judgment as a matter of law. Lastly, we will view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party.

***Communications Network International, Ltd. V. Mullineaux***, 187 A.3d 951, 960 (Pa. Super. 2018) (emphasis and citation omitted).

*Issue 1*

In Appellant's first issue, with respect to the federal action seeking long-term disability benefits, she claims that the trial court "improperly used Attorney Abramowitz's negligence … as a reward for [Law Firm] by finding that [Appellant] could not have recovered on her claim because of the uncontradicted medical records." Appellant's Brief at 13 (emphasis omitted). To elaborate, she states that Law Firm cited voluminous medical records that purportedly showed that Appellant was not disabled and then "argued that because [Appellant] was not disabled according to those medical records, … recovery would be impossible in her professional negligence action." ***Id.*** at 14. She says that, "if [Attorney] Abramowitz would have developed the case

- 19 -

in even the most basic way…, then the medical records presented by [Appellant] *would* have been disputed, and there would have existed a genuine issue of material fact as to whether [Appellant] was disabled." *Id.* (emphasis in original). As such, Appellant claims that the trial court "rewarded [Law Firm] for [Attorney] Abramowitz's negligence by essentially ruling that because [Attorney] Abramowitz was negligent and failed to develop [Appellant's] case, the medical records were uncontested and [Appellant] therefore could not have prevailed on her professional negligence claim." *Id.*

No relief is due. Initially, we deem this issue waived due to Appellant's failure to properly develop it in her appellate brief. She cites no case law pertaining to legal malpractice claims, fails to provide any analysis of what she was required to establish below to survive summary judgment, and does not specifically discuss any of the evidence in the record. "When briefing the various issues that have been preserved, it is an appellant's duty to present arguments that are sufficiently developed for our review. The brief must support the claims with pertinent discussion, with references to the record and with citations to legal authorities." *Commonwealth v. Hardy*, 918 A.2d 766, 771 (Pa. Super. 2007) (citations omitted). Further, "[t]his Court is neither obliged, nor even particularly equipped, to develop an argument for a party. … When an appellant fails to develop his issue in an argument and fails to cite any legal authority, the issue is waived." *In re S.T.S., Jr.*, 76 A.3d 24, 42 (Pa. Super. 2013) (citations omitted). Thus, we deem Appellant's first issue waived.

Nevertheless, even if not waived, we would conclude that the trial court did not err in granting summary judgment in favor of Law Firm on this basis. Our Supreme Court has previously explained that:

> In order to establish a claim of legal malpractice, a plaintiff/aggrieved client must demonstrate three basic elements:
>
> > 1) employment of the attorney or other basis for a duty;
> >
> > 2) the failure of the attorney to exercise ordinary skill and knowledge; and
> >
> > 3) that such negligence was the proximate cause of damage to the plaintiff.
>
> An essential element to this cause of action is proof of actual loss rather than a breach of a professional duty causing only nominal damages, speculative harm or the threat of future harm. Damages are considered remote or speculative only if there is uncertainty concerning the identification of the existence of damages rather than the ability to precisely calculate the amount or value of damages. In essence, a legal malpractice action in Pennsylvania requires the plaintiff to prove that he had a viable cause of action against the party he wished to sue in the underlying case and that the attorney he hired was negligent in prosecuting or defending that underlying case (often referred to as proving a "case within a case"). …
>
> [A] legal malpractice action is distinctly different from any other type of lawsuit brought in the Commonwealth. A legal malpractice action is different because … a plaintiff must prove a case within a case since he must initially establish by a preponderance of the evidence that he would have recovered a judgment in the underlying action…. It is only after the plaintiff proves he would have recovered a judgment in the underlying action that the plaintiff can then proceed with proof that the attorney he engaged to prosecute or defend the underlying action was negligent in the handling of the underlying action and that negligence was the proximate cause of the plaintiff's loss since it prevented the plaintiff from being properly compensated for his loss.

***Kituskie v. Corbman***, 714 A.2d 1027, 1029-30 (Pa. 1998) (cleaned up).

Here, Law Firm argued in its motion for summary judgment that Appellant could not have succeeded in the underlying federal action for long-term disability benefits due to extensive medical evidence that Appellant was able to work. ***See, e.g.***, Law Firm's Motion for Summary Judgment at ¶¶ 37-38 ("[Appellant] cannot merely argue that [Attorney Abramowitz] should have responded, but must establish that she would have ultimately prevailed based on evidence that was available at the time. After more than a decade of litigation and a review of all available medical records dating back a quarter century, … Law Firm is at a loss as to what evidence could possibly have changed the outcome of the LTD benefits case…."). Regardless of any prior inaction on the part of Attorney Abramowitz, it was ***Appellant's burden in this case*** to produce evidence showing that she would have prevailed in the federal action. ***Communications Network International, Ltd.***, 187 A.3d at 960 ("Where the non-moving party bears the burden of proof on an issue, he may not merely rely on his pleadings or answers in order to survive summary judgment. Failure of a non-moving party to adduce sufficient evidence on an issue essential to his case and on which it bears the burden of proof … establishes the entitlement of the moving party to judgment as a matter of law."); ***see also Kituskie***, ***supra*** ("A legal malpractice action is different because … a plaintiff must prove a case within a case since he must initially establish by a preponderance of the evidence that he would have recovered a judgment in the underlying action…."). In her brief in opposition to summary judgment, Appellant did not proffer, or point to, any evidence to

demonstrate that she would have been successful in the federal litigation for long-term disability benefits. As such, we would reject Appellant's argument that the trial court improperly 'rewarded' Law Firm for Attorney Abramowitz's alleged negligence. Thus, we affirm the part of the trial court's order granting summary judgment in favor of Law Firm with respect to Appellant's legal malpractice claim based on Attorney Abramowitz's failure to respond to Employer's summary judgment motion in the federal litigation.

*Issue 2*

In Appellant's second issue, she contends that the trial court erred in determining that, with respect to her social security disability benefits, she suffered no damages because she eventually obtained benefits back-dated to March 2006. Appellant's Brief at 18. Her only argument on appeal with respect to this issue is that Law Firm and the trial court fail to "acknowledge the simple fact that she had to go for approximately two (2) years without the benefits to which she was entitled." *Id.* at 18-19.

No relief is due. Again, in her brief, Appellant sets forth no legal authority pertaining to legal malpractice actions and what she was required to prove to sustain her claim relating to the social security disability benefits. As such, this claim is waived. *See In re S.T.S., Jr.*, *supra*; *Hardy*, *supra*.

Nevertheless, even if not waived for her deficient appellate argument, we would not grant relief. With respect to this claim, Law Firm set forth in its summary judgment motion that Appellant engaged Attorney Abramowitz in 2006, to pursue her social security disability benefits claim for her. Law Firm's

Motion for Summary Judgment at ¶¶ 10, 44. However, it explained that Attorney Abramowitz became disabled that year and ceased practicing law. *Id.* According to Law Firm, by July 2006, Appellant sought review of her social security disability benefits claim through successor counsel. *Id.* at ¶¶ 13, 44-45. Law Firm says that, through successor counsel, Appellant received a favorable decision in 2008, and was determined to be disabled as of March 2006. *Id.* at ¶¶ 11, 45, 46. As such, Law Firm claimed that no harm resulted, as Appellant received the social security disability benefits she was seeking and that such benefits covered the only period of time where Appellant was actually able to establish evidence of a disabling and qualifying condition. *Id.* at ¶ 46.

Appellant does not point to any contrary evidence disputing any of the above-stated facts. Nevertheless, though, she claims that she suffered through "two[]years of no benefits due to [Attorney] Abramowitz's negligence and then had to hire another attorney to pursue benefits[,]" and maintains that "[t]his delay is specifically attributed to [Attorney] Abramowitz and [Law Firm]." Appellant's Brief at 19. We reiterate that, "[w]here the non-moving party bears the burden of proof on an issue, he may not merely rely on his pleadings or answers in order to survive summary judgment. Failure of a non-moving party to adduce sufficient evidence on an issue essential to his case and on which it bears the burden of proof … establishes the entitlement of the moving party to judgment as a matter of law." *Communications Network International, Ltd.*, 187 A.3d at 960. Here, in responding to Law Firm's

motion, Appellant did not proffer, or point to, any evidence to demonstrate that she would have actually started receiving the benefits in 2006, had Attorney Abramowitz properly pursued the matter for her, or to support any of the consequential damages she suggests that she suffered because of Attorney Abramowitz and the delay. Thus, based on the foregoing, we affirm the part of the trial court's order granting summary judgment to Law Firm with respect to Appellant's legal malpractice claim relating to the social security disability benefits.

*Issue 3*

In Appellant's third issue, she claims that the trial court erred in ruling that there was no genuine issue of material fact as to the date that Appellant discovered the negligence committed by Attorney Abramowitz regarding his failure to submit paperwork for a formal claim reassessment process with respect to Appellant's long-term disability claim. ***See*** Appellant's Brief at 15. She says that her claim pertaining to Attorney Abramowitz's failure to complete, or inform Appellant of, the reassessment is not barred by the statute of limitations, as the reassessment form came out in March of 2007, and Appellant filed the praecipe for writ of summons on July 30, 2008, well within the two-year statute of limitations. ***Id.***

Initially, the trial court did not specifically address Appellant's claim about the 2007 reassessment form.[12]  Law Firm also gives it very little attention in its brief, other than vaguely indicating that the claim could be dismissed based on the statute of limitations or because Appellant has not shown that she would have obtained any relief had the reassessment been pursued.  **See** Law Firm's Brief at 26-27.  As such, we do not have much insight into why this claim was dismissed.[13]  However, because the other two

_____

[12] We observe that, in Appellant's brief in opposition to Law Firm's summary judgment motion and in her Rule 1925(b) statement, Appellant disputed whether the statute of limitations barred her reassessment claim.  **See** Appellant's Brief in Opposition to Motion for Summary Judgment at 6 (discerning that, in Law Firm's argument that Appellant's action should be barred by the statute of limitations, it "skipped over the fact that [Appellant's] Amended Complaint also pursues negligence in regard to [Attorney] Abramowitz's failure to complete the reassessment form, which wasn't even issued until March of 2007"); Rule 1925(b) Statement, 3/14/23, at ¶ 3 ("A genuine issue of material fact exists as to the date that [Appellant] discovered the negligence committed by Attorney Abramowitz regarding his failure to submit paperwork for a formal claim reassessment process with respect to [Appellant's] long-term disability claim.").  Yet, the trial court failed to specifically address this issue in its January 31, 2023 order or subsequent Rule 1925(a) opinion.

[13] Though not stated anywhere, it is possible that the trial court did not view the reassessment form issue as part of Appellant's legal malpractice claim against Law Firm based on *respondeat superior* liability.  We recognize that in Count I of Appellant's amended complaint — which relates to Appellant's claim against Law Firm based on *respondeat superior* liability — Appellant does not specifically mention the reassessment form.  However, in an earlier paragraph of her complaint, which is incorporated into Count I, Appellant stated that "neither **[Attorney] Abramowitz** nor [Law] Firm completed the [2007 reassessment form] or informed [Appellant] about its existence and, as a result, [Appellant's] claim was not placed in the reassessment program." Amended Complaint at ¶ 22 (emphasis added).  Notably, Law Firm does not
*(Footnote Continued Next Page)*

grounds for summary judgment raised by Law Firm do not relate to the reassessment claim, and Appellant suggests that it was dismissed based on the statute of limitations, we will presume it was dismissed on that basis.

On appeal, Appellant does not meet her burden to show why any dismissal of this claim based on the statute of limitations was in error. While she recognizes (without citation) that the statute of limitations period on legal malpractice claims sounding in negligence is two years, she does not meaningfully discuss any law pertaining to the statute of limitations for legal malpractice claims, nor does she analyze how that law would apply in the context of her claim regarding the 2007 reassessment form. Our own research shows that "the trigger for the accrual of a legal malpractice action, for statute of limitations purposes, is not the realization of actual loss, ***but the occurrence of a breach of duty***." ***Communications Network International, Ltd.***, 187 A.3d at 960 (emphasis added); ***see also*** 42 Pa.C.S. § 5524(7) (imposing two-year statute of limitations period on legal malpractice claims sounding in negligence). Further, the statute of limitations is tolled "when the client, despite the exercise of due diligence, cannot discover the injury or its cause." ***Communications Network International, Ltd.***, 187 A.3d at 961 (citation and emphasis omitted).

---

complain about any insufficiency in Appellant's pleadings with respect to the reassessment claim she now raises and, consequently, we do not address the propriety of Appellant's complaint further.

Appellant provides no analysis of when the occurrence of Attorney Abramowitz's breach of duty occurred to trigger the statute of limitations. While the reassessment form was sent on March 27, 2007, Appellant does not dispute the fact that Attorney Abramowitz was no longer her attorney at that time. *See* Appellant's Brief at 11-12 (Appellant's recognizing that Law Firm argued in its summary judgment motion that Appellant terminated Attorney Abramowitz in July 2006, and not disputing that fact).[14] Appellant offers no explanation as to what duty Attorney Abramowitz owed her with respect to the March 27, 2007 reassessment form given that he no longer represented her, how he breached any duty, and when he did so, which is all pertinent information for determining if the claim is timely under the applicable statute of limitations. We decline to craft this argument for Appellant. *See In re S.T.S., Jr.*, *supra*; *Hardy*, *supra*. Moreover, to the extent Appellant alleged in her complaint that she was not aware that her claim could have been reassessed until July 2008, she proffered no evidence below to support this averment. *Communications Network International, Ltd.*, 187 A.3d at 960 ("Where the non-moving party bears the burden of proof on an issue, he may not merely rely on his pleadings or answers in order to survive summary judgment. Failure of a non-moving party to adduce sufficient evidence on an issue essential to his case and on which it bears the burden of proof …

_____

[14] We also note that any direct negligence claims against Law Firm have already been dismissed, and Appellant does not challenge that ruling on appeal.

establishes the entitlement of the moving party to judgment as a matter of law."). Accordingly, Appellant's third issue does not warrant relief.[15]

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

12/22/2023

---

[15] Due to our disposition, we need not address Appellant's remaining issues.